# CHARLESTON.

## Preston County Coke Company v. Elkins Coal & Coke Company.

Submitted September 17, 1918. Decided September 24, 1918.

1. Mines and Minerals—*Rights in Surface Land—Release—Effect.*

   Mining rights in surface land granted together with a right to purchase the surface are not released or extinguished by a release only of the right of purchase, to one who took it subject to the mining rights, executed with knowledge of the intention of the releasee to devote the surface to certain uses not necessarily preclusive of the exercise of the mining rights. (p. 592).

2. Estoppel—*Effect of Release of Mining Rights.*

   Nor does failure of the mine owner to exercise his rights for a long period of time after the execution of the release and improvement of the surface amount to practical construction of the release against such right or extinguish it under the law of estoppel. (p. 594).

3. Mines and Minerals—*Rights of Way—Construction.*

   A grant of ways into, over and under a tract of land, at such points and in such manner as may be necessary and proper for the mining and marketing of the coal under it, does not limit the grantee to a single way or opening. (p. 595).

4. Same—*Grant of Way—Appropriate Openings—"Necessary and Proper."*

   Under such a grant, ways and openings that are appropriate, useful and convenient in the mining of the coal are legally necessary and proper. (p. 596).

5. Same—*Mining Rights—Inconvenience to Owner of Surface.*

   Mere inconvenience to the owner of the servient estate, wrought by the exercise of mining rights, does not constitute a limitation upon them. (p. 597).

6. Same—*Improvements of Surface—Rights of Mine Owner to Openings.*

   A small garden of a tenant is not such an improvement upon the servient estate as precludes the mine owner from the exercise of his right. (p 597).

7. Same—*Injury to Springs—Release of Damage.*

   A covenant in a deed granting mining rights, which absolves the grantee from liability for injury to springs on the surface or destruction thereof, as an incident of the removal of the coal,

justifies such injury or destruction at such time as the mine owner may see fit to take out the coal, and injury to a spring constitutes no ground for restraint of the mining operation. (597).

Appeal from Circuit Court, Preston County.

Bill by the Preston County Coke Company against the Elkins Coal & Coke Company. Decree for plaintiff, and defendant appeals, with cross-assignment of error by plaintiff.

*Affirmed.*

*Joseph V. Gibson, Chas. D. Peddicord,* and *Glasscock & Glasscock,* for appellant.

*A. G. Hughes,* and *Moreland & Guy,* for appellee.

POFFENBARGER, PRESIDENT:

Having obtained, upon its answer to the plaintiff's bill and affidavits filed in support thereof, a partial dissolution of an injunction restraining and inhibiting it, its officers, agents, servants and employees from interfering with the plaintiff, its agents and employees, in the mining and removal, under granted rights, of the coal in a tract of land owned by the defendant and containing 33.15 acres, and from threatening, annoying, intimidating and obstructing plaintiff, in the opening and mining of said coal and building necessary and proper approaches, ways, roads and tracks to such openings and mines, the defendant has appealed from so much of the decree as left the residue of the injunction in force and overruled its motion for full and complete dissolution. On the other hand, the plaintiff cross-assigns error in so much of the decree as deprived it of a portion of its injunction.

The defendant owns the surface of said tract of land and the plaintiff the coal therein and express grants of mining rights and privileges to be exercised in the mining and removal of the coal. It was formerly a part of a tract containing 1,790 acres and known as the "Falls Tract." The coal in the whole of the "Falls Tract" was separated in title from the surface by a deed from Benjamin E. Lemon and others to Joseph E. Barnes, dated Sept. 17, 1902. The Barnes title came into the hands of William P. Murray by a deed

dated 'December 26, 1902, and he conveyed it to the plaintiff by a deed dated February 1, 1907. In addition to the coal and mining rights, the Lemon deed conferred upon the grantee, his heirs and assigns, right to purchase and take, at any time, as much of the surface of the tract of land as might be necessary to "operation of said coal or manufacturing coke," at a price not exceeding $50.00 per acre; and this right passed by subsequent conveyances to the plaintiff. The defendant obtained its title to the surface by a deed dated February 9, 1907, and the plaintiff released to it its option or privilege of purchase, by a deed dated February 16, 1907. Soon after the procurement of this release, the defendant began the erection of coke ovens, miners houses and other structures on the tract, and completed them, at a cost of more than $70,000.00. These structures or some of them are still used by the defendant in connection with its mining operations on adjacent lands.

The coal the plaintiff desires to mine on the 33 acre tract, through an opening thereon, underlies only a small portion of it, about five acres, and the opening made does not interfere with the operations of the coke ovens, nor with the occupancy of the miners houses, but it destroys a spring from which some of the houses were supplied with water by means of a pipe, and subjects the occupants of the houses to some annoyance. It is in the rear of the miners houses, some of the witnesses say, about 100 feet, and another says the tipple will be not more than 75 or 80 feet distant. The approach or way to it extends over rough ground for a distance of about 150 feet, to a road made over the property by the defendant and used by it. The plaintiff's plan or method of operation is to mine the coal from this opening and haul it from there by means of a wagon over one of defendant's roads, to a public road running through the property, and thence, by the public road, to a railroad siding.

In so far as they are material here, the mining rights and privileges granted with the coal in the "Falls Tract," are defined in the deed as follows: "The free and uninterrupted right of way into, over and under the said tract of land, at such points and in such manner for such ways, tracks and

roads as may be necessary and proper for the purpose of ventilating, draining, digging, operating, shipping and carrying away said coal or other coal or coke without any liability for damages that may arise from the removal of any or all of said coal or the manufacture of coke, without being required to provide for the support of the overlying strata or surface, or without being liable for any injury to the same or anything therein or thereon, or to the springs or the water courses thereof.'' The defendant took its title to the surface of the 33.15 acres, subject to these rights and privileges, by an express exception in its deed. Plaintiff's release of its right to purchase said surface is full and complete, but it does not release its mining rights and privileges therein, nor does it refer to them in any way.

In as much as the plaintiff executed to the defendant a release of its right to purchase the surface of the tract of land in question, with knowledge of the purpose for which the defendant had bought it of Coban and others, and its refusal to enter upon or make any use thereof until after the execution of the release, it is insisted that the release extinguished all rights of the plaintiff in the surface, notwithstanding its silence as to the mining rights and privileges vested in the grantee of the coal and then held by the plaintiff. Such an interpretation of the release would be a manifest departure from its terms, and the occasion of its execution is not necessarily inconsistent with its express provisions, since some necessary and proper mining rights could be exercised upon a tract of this area, without unreasonable interference with the uses to which the defendant expected to devote the property. A mine entry on it and a roadway or tramway leading therefrom, or a ventilating shaft on it, would require but a very small portion of the 33 acres, and might be so located as not to interfere with the operation and enjoyment of the coke ovens, miners houses and other structures likely to be erected upon it. It is matter of common knowledge that the surface of land can be advantageously used for many purposes, in subordination to the exercise of reasonable and ordinary mining rights, and both parties are deemed to have had knowledge of this fact. Though conclusively presumed to have had such

knowledge as well as that of the existence of the plaintiff's mining rights in the property, the defendant took a release limited by its terms to its mere right to purchase the surface and wholly silent respecting the mining rights. The deed conferring the right of purchase and referred to in the release vested the mining rights. If it had been the intention of the parties to exclude them, it is altogether improbable that they would have failed to mention them in the release, and, since it is possible for the defendant to have substantial enjoyment of its purchase, subject to the mining rights of the plaintiff, it is highly probable that they did not intend to extinguish them. Moreover, title to the surface for the purpose to which it is devoted was taken by a deed expressly excepting the mining rights. Regardless of the option of purchase, the defendant held the surface, at the date of the release, subject to two burdens, right to mine and right to purchase, and the release dealt with the latter only. Obviously, therefore, the rule of construction applied in *John* v. *Elkins*, 63 W. Va. 158 and *Gas Co.* v. *Oil Co.*, 56 W. Va. 402, and other cases relied upon in argument, does not apply here.

The conclusion just stated, as well as the general principles therein referred to, is altogether inconsistent with the theory of loss of the mining rights under the law of estoppel. The mining rights in the surface are appurtenant to the coal, and, though they may be restricted or narrowed to some extent, under principles and rules of interpretation or the law of estoppel, by the condition in which the surface is found in consequence of improvement, at the date of the exercise thereof, they cannot be deemd to have been extinguished by the mere use and improvement of the surface, with the knowledge of their owner, nor by his non-user thereof, in view of knowledge of such improvement. As long as there is title to the coal, separate and distinct from the title to the surface, right of mining and removal of the former must necessarily exist, and mining rights and privileges granted with the coal, being appurtenant thereto, must likewise exist in some form and to some extent, as long as the title to the coal remains valid. Possession of the surface and improvement thereof are not inconsistent either with the title to the

coal outstanding in another, nor with the right of mining
the same. Nor does such possession extinguish the outstand-
ing title to the mineral. *Wallace* v. *Elm Grove Coal Co.*, 58
W. Va. 449; *Plant* v. *Humphries*, 66 W. Va. 88; *Montgomery*
v. *Fuel Co.*, 61 W. Va. 626. To what extent, if any, the mine
owner must respect buildings and other improvements on the
property in the exercise of his mining right, is a question
that does not arise upon the contention of entire extinguish-
ment of such right, in so far as it involves a surface opening.

Economy and practicability of mining the coal from a
point on adjoining surface owned by the plaintiff, at which
an opening has been made or is contemplated, are relied upon
in resistance of the claim that the opening in question is
necessary and proper. From that point, which is only 550
feet distant from the opening on the 33 acre tract, the coal
in question can be obtained and loaded into cars, without
the necessity of hauling it in wagons, but the coal at the point
of the hill, the location of the opening, would not be immedi-
ately available, since it would be necessary to mine to it from
the other point, before it could be taken out. As the coal
dips toward the point of the hill, the opening in question is
the lowest point of the vein, wherefore better drainage is
obtained by it than would be effected by the other. Though
it is not suggested, the prime object of the enterprise com-
plained of may be procurement of drainage for the mining
of the entire body of coal in the immediate vicinity of the
opening at the point of the hill and the other prospective
one farther north. Removal of the coal from the point of
the hill, within the 33 acre tract, so as to give drainage there,
might greatly cheapen and facilitate the mining of the main
body of coal through the other opening, without infliction
of any serious injury upon the servient estate. A drainage
ditch through it might be practically harmless, though pass-
ing between miners' houses. As to this, however, we decide
nothing, since the facts are not fully developed. The addi-
tional expense of 75 cents or $1.00 per ton, incident to the
hauling of part of the comparatively small area of coal in
question, may be fully justified by the advantages to accrue
from the operation, to the larger mining proposition.

As to whether a considerable part of the coal in the 33 acre tract can be advantageously, properly and conveniently mined from any opening other than the one in question, the affidavits filed by the litigating parties are highly conflicting. For the defendant, the practicability of mining and marketing it from another, at lower cost, is insisted upon and proved by the affidavits of several experienced coal men. For the plaintiff, the impracticability of drainage from another opening is relied upon, and the case supplemented by the opinions of other experienced men, that advantageous and proper mining of part of the coal can be done only from the opening at the point of the hill. There seems to be no absolute or physical necessity for entry upon the surface of the 33 acre tract, but that is not the sense in which the words "necessary" and "proper" in grants of ways and other easements, are used. They have a broader significance. That which is really appropriate, useful and convenient is necessary and proper, notwithstanding something different might be made to subserve the same purpose. In the application of this principle to easements, the necessity for one way may be disproved by the existence of another previously selected or established, but, in the establishment of one way, when no other exists, utility and convenience are the dominating factors, subject to the limitation that the selection shall be so made as not to work unnecessary injury to the servient estate. Gale, Easements, 169; Jones, Easements, sec. 313. No doubt, there must be reasonable necessity and propriety in the selection and what is reasonably necessary and proper is largely a question of fact. The grant of mining rights involved here contemplates more than a single means of access to the coal. It gives a right of way into, over and under the land, at such points and in such manner for such ways, tracks and roads as may be necessary and proper for ventilating, draining, digging, operating, shipping and carrying away the coal. Having granted right to go both over and under the land, the grantee cannot be consistently limited to an underground approach to the coal in any part of it, if there is reasonable necessity for use thereof. The advantage of natural drainage for some acres of coal area is a circum-

stance of considerable weight in the solution of the question. Then, again, the mine owner, having right to more than one opening and more than one way, may find it very much to his advantage to operate two openings at the same time. Reasonable necessity for his purposes, the mining and marketing of the coal, is the true test, although the means adopted by him may be subject to reasonable limitation by the conditions he finds on the servient estate. The rule of reason works both ways.

The enterprise in question has not thus far wrought any serious injury to the servient estate. There is a space of about 100 feet between the opening and the rear of some of the houses, and the small tipple will not be within 75 feet of them. A small garden has been destroyed, but that is not an improvement of such character as to work a limitation upon the granted mining rights. Nor can the annoyance to tenants from coal dust and debris be permitted to control, since it necessarily exists and obtains to a greater or less extent in and about all mining operations. As to the spring, the grant specifically absolves from liability for injury thereto or destruction thereof, and its loss is a mere incident of the removal of the coal, whether taken out through one opening or another. The time of such destruction thereof has no legal potency and cannot control or deny the right granted. In other words, it signifies nothing that the spring would have lasted longer, had the mining under it been done from a different opening and direction. Right to mine the coal, under the stipulations of the deed, carries right to destroy the spring, and the time of mining it is clearly within the discretion and power of its owner.

The cross-assignment of error is not well taken. Roads and streets laid out and improved by the owner of the servient estate cannot be arbitrarily appropriated and used to their injury by the owner of the dominant estate. No necessity for the use of any portion of the defendant's road has been shown. It cannot be adopted merely to save the time and expense incident to the construction of a mining road.

These conclusions are limited, of course, to the rights of parties respecting merely interlocutory orders and a cause

that may be only partially developed. What the ultimate and complete rights of the parties are may depend somewhat upon facts and circumstances not yet disclosed.

Seeing no error in the decree complained of, we will affirm it.                                                              *Affirmed.*