TEXAS CO. v. STATE ex rel. CORYELL, County Atty.

No. 31827. Feb. 18, 1947.

Rehearing Denied May 13, 1947.

*180 P. 2d 631.*

566

& Pruet, of Oklahoma City, and Oscar John Dorwin, of New York, N. Y., of counsel), for plaintiff in error.

G. B. (Chuck) Coryell, County Atty. of Creek County, Don Walker, Everett S. Collins, T. L. Blakemore, and C. J. Davenport, all of Sapulpa, L. L. Jones and Fletcher Johnson, both of Bristow, O. A. Cargill, of Oklahoma City, and Don Lewis, of Washington, D. C., for defendant in error.

John Embry, Charles Edward Johnson, V. P. Crowe, Raymond A. Tolbert, Troy Shelton, Calvin Boxley and F. C. Love, all of Oklahoma City, amici curiae.

J. D. Cofield, of Pauls Valley, J. O. Counts, of Frederick, and Victor C. Phillips, of Durant, Committee appointed by Association of County Attorneys of Oklahoma, amici curiae.

Randell S. Cobb, Atty. Gen., and James W. Bounds, Asst. Atty. Gen., for State of Oklahoma.

WELCH, J. This is an appeal from judgment escheating lands and oil and gas rights in lands described in 15 separate tracts located in Creek county, acquired and held by the Texas Company, a Delaware corporation, licensed and doing business in the State of Oklahoma. The corporation is authorized by its charter to engage in mining, the production, storage, transportation, refining, manufacture, purchase and sale of mineral products, and oil and gas, and to acquire real and personal property for its use.

The issues before the trial court involved construction and application of section 2, art. 22, Constitution, and section 1636, O.S. 1931. That section of the statute was in effect at commencement of this action, but has since been repealed. The court made specific findings of fact concerning the property involved in each of the causes of action. But having reached a legal conclusion whereby all the properties involved were escheatable, the court so held without consideration of the separate

Y. A. Land, J. H. Hill, John R. Ramsey, B. W. Griffith, S. H. Kaufman, all of Tulsa (Richardson, Shartel, Cochran

status of the several properties involved. We shall later refer to the fact situation as to each cause of action.

The constitutional provision is in part as follows:

"No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further expect such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; . . ."

The learned trial judge, as a conclusion of law, expressed the view that as applied to such corporations as defendant, it is the purpose of the constitutional provision to:

"Prohibit corporate ownership of land or real estate outside of incorporated cities and towns and additions thereto"

and his reasons were based upon the initial inhibition in the constitutional provision as against the creation or licensing of corporations within this state to buy, acquire, trade or deal in rural real estate, together with the second provision in reference to rural real estate which "prohibits corporations from doing those things which a corporation cannot be created or licensed to do," and the view that the provision further prohibits such corporations from buying, acquiring, trading or dealing in real estate *in such towns and cities* except when such real estate is necessary and proper for carrying on the business for which such corporation was chartered or license. It was the trial court's view that "It is a further exception to the corporate privilege of owning real estate, to wit, real estate situated in incorporated cities and towns and additions thereto."

The conclusion of law is error. The constitutional provision deals with different types of corporations. The first is land companies. They shall have no corporate existence within this state to deal in other than real estate located in incorporated cities and towns and additions thereto. As to corporations in general, such as typified by the defendant corporation, it is not denied ownership of rural real estate, but it is limited under the further exception in its acquisition of such real estate "as shall be necessary and proper for carrying on the business for which it was chartered or licensed."

The constitutional provision is not ambiguous, and while resort has been had by the parties to proceedings of the Constitutional Convention to sustain their respective views of meaning to be derived from the words employed, there is no absolute necessity for consideration of those proceedings. The Constitution does not derive its force from the convention, but from the people who ratified and adopted it. The intention to be ascertained is that of the people. The rule of construction is common understanding, rather than obtuse meaning as may be attributed by some who were members of the convention and based upon motives personally persuasive. Cooley, Const. Limitations.

"Courts, in construing unambiguous constitutional provisions, are not at liberty to search for meaning beyond the instrument . . . Meaning of Constitution, apparent on face, must be accepted." Shaw v. Crumbine, 137 Okla. 95. 278 P. 311; State v. Millar, 21 Okla. 448, 96 P. 747.

The trial court erred in construing the further exception as a limitation upon the initial prohibition. The Texas Company, under the further exception, was limited in its ownership of rural real estate to such as was necessary and proper for carrying on its corporate business. Under the adverse view, oil companies could not own real estate outside of cities and towns and additions thereto, upon which to locate refineries, gasoline plants, or tank farms,

568

nor would other corporations own rural real estate upon which to locate cotton compresses, warehouses, grain elevators, mills and plants, nor golf clubs, hospitals, sanitoriums, and the like. It, would mean that industries could not be but urban. Such was not the intention of the constitutional provision as indicated by the use of "further" in connection with the exception signifying additional or as going or lying beyond, thus enlarging the first exception but restricting and narrowing its meaning. The constitutional provision did not negative corporate ownership of rural lands, but amplified it. Truax v. Capitol Life Ins. Co., 166 Okla. 153, 26 P. 2d 755.

In Oklahoma Natural Gas Co. v. State ex rel. Vassar, 187 Okla. 164, 101 P. 2d 793, this court analyzed the whole of section 2, art. 22, Constitution, setting out the prohibition and exceptions, and clearly recognized that each of the latter was separate and independent of the former and not mere restrictions or limitations upon the initial prohibition.

This construction accords with legislative interpretation and its soundness is supported by previous decisions of this court.

The legislative interpretation is reflected by enactments expressly recognizing corporate ownership of rural real estate. Deserving of especial reference is the Act of the First Legislature (S.L. 1907-1908, pp. 196 and 387) and that of the Seventh Legislature (ch. 172, S.L. 1919, same as section 1636, O.S. 1931) which, in contemplation of the constitutional provision here involved, undertook to provide for the escheat of land held in excess of constitutional limitations, and affords the statutory basis for the instant action. And also confirmatory of the legislative construction is the Act of the Sixteenth Legislature, S. L. 1937, p. 314.

The great weight to be given by the court to legislative interpretation in construing constitutional provisions is reflected in the following cases: Coyle v. Smith, 28 Okla. 121, 113 P. 944 (aff.

221 U. S. 559, 55 L. Ed. 853); Missouri, O. & G. Ry. Co. v. State, 29 Okla. 640, 119 P. 117; Myers v. United States, 272 U. S. 52, 174, 71 L. Ed. 160. This court recognized legality of corporate ownership of real estate in Oklahoma Natural Gas Co. v. State ex rel. Vassar, supra.

We deem it settled, then, as a general proposition that a corporation may lawfully acquire and hold real estate for its own proper business use.

Another basic question here involved is whether mineral rights owned separately from the title to the land, as distinguished from mineral rights held under mining leases thereon, are escheatable under the law. The affirmative argument stresses the language of the constitutional provision as affording the test; and the negative, the language of the statute which provides for the escheat. In order for the language of the Constitution to control it would be necessary to find that it operated by its own forces to accomplish the escheat, that is, that it is self-executing. If it be not self-executing and consequently the right to the escheat be dependent upon statutory enactment, the determination of what is escheatable must be determined by the language of the statute on which the right rests, and this, without reference to the Constitution except as authority for or against the validity of the enactment.

That the provisions of section 2, art. 22, Constitution, are not self-executing and that the jurisdiction of the court to declare an escheat must depend upon the statutory enactment therefor was declared by this court in State v. Prairie Oil & Gas Co., 64 Okla. 267, 167 P. 756, as follows:

"It will be seen that the Constitution prescribed no penalty for the violation of its prohibitory provisions. It contains no self-executing provisions declaring escheats or forfeitures. . . .

"In this jurisdiction the power to decree an escheat of real or other property is to be found, not in the Constitution, but in the statute law of the state. . . ."

The doctrine there announced was reaffirmed in Parwal Inv. Co. et al. v. State, 71 Okla. 121, 175 P. 514, and in Sheridan Oil Co. v. Superior Court of Creek County, 183 Okla. 372, 82 P. 2d 832.

To the effect that such holding is in accord with the weight of authority, and as illustrative of the underlying principles, we quote the following from 10 R. C. L. p. 607, which is supported by authorities there cited:

"The statute laws of certain states contain provisions prohibiting a corporation from holding real property, except for the purposes of its charter, or from holding it beyond a prescribed limit or quantity. As a general rule it may be said that the violation of such a prohibition, where no specific penalty is imposed, does not accomplish an escheat of the property to the state. There is no question, however, but that a state may validly impose the penalty of escheat for the violation of such a statute. Where this is the case the holding of real estate by a corporation in violation of the statute, while a cause or ground of escheat, does not ipso facto effect an escheat; in other words, the title to the property, notwithstanding the existence of the grounds of escheat, remains in the corporation until an action for escheat is instituted; . . ."

A leading case which fully supports the quoted text and wherein authorities are reviewed and the question treated exhaustively is Louisville School Bd. v. King, 127 Ky. 824, 107 S. W. 247, 32 Ky. L. 687, 15 L.R.A. (N.S.) 379, which case is cited in Parwal Inv. Co. v. State, supra.

And the conclusion that the quoted section of the Constitution is not self-executing is sound in reason. Too many questions remain open upon reading it alone. True, it well states the policy which is in effect that a corporation may not acquire or own land except such as shall be necessary and proper for carrying on its business. But from the constitutional provision alone what is the penalty for its violation? Is it forfeiture of the tract of land? Or part

of it? Is it forfeiture of double the value? Or for such a violation of the fundamental law of the state is the corporation to forfeit its charter or license from the state? And how is the violation to be determined? And the penalty applied? When a corporation has taken and holds a tract of land, it may well be debatable whether it holds and uses it as necessary and proper in its lawful business or otherwise. How is the test to be made? All those questions, and others, not answered by the constitutional provision alone, are answered by the vitalizing statute relied upon here, sections 1635 to 1640, O. S. 1931. Those sections not only declare the taking and holding of land by a corporation in violation of the Constitution to be illegal and unlawful, but provide in detail for the bringing of an action such as this, for determination of the issue, for the penalty and for the application thereof, And as stated, plaintiff here specifically relies on such statutory provisions for authority for this action. We are convinced we should not recede from the position of the court established by former decisions that (1) the constitutional provision is not self-executing, and (2) these sections of the statute vitalize it and properly form the basis for an action such as this.

In Sunray Oil Co. v. Cortez Oil Co., 188 Okla. 690, 112 P. 2d 792, we said:

"A grant conveying an interest in the oil and gas rights only in land, together with the right of ingress and egress and the right to use so much of the surface as may be necessary to explore for and produce oil or gas, conveys no title to the oil or gas which may penetrate the strata underlying the surface of the land."

For the purpose of the question here the exact nature of the estate or interest conveyed by such a grant is immaterial.

The lands made subject to escheat by the terms of the statute are those taken or held in contravention of the constitutional provision. The contravening import of the provision is to be ascertained from its language in light of the policy to be subserved.

On the part of the state it is urged (1) that the debates in the Constitutional Convention reflect the attitude that corporations be strictly limited in the ownership of land, (2) that the purpose of the constitutional provision was to encourage rural home ownership and to prevent corporations from acquiring rural lands except as incident to a permissible corporate business, (3) that burden of proof was on defendant corporation to show authority to own the land.

It is manifest from the quoted debates that there was a determination to prevent corporate ownership of farm lands because it was deemed to be inimical to home ownership and to promote tenancy in the farming class. And emphasis was placed upon the threat to such policy by corporations authorized to buy and, sell real estate and by public service corporations such as carriers owning land beyond their actual needs. In such connection there is no specific mention of oil and gas mining corporations, or any statement indicative that the exercise of the powers of such carried any threat to such policy.

In the constitutional provision there is a limitation upon the power to create or license a corporation to buy, acquire, trade or deal in real estate other than that located in incorporated cities, towns and additions thereto, and corporations of that type are forbidden to deal in real estate not so located. There is a limitation upon the power to create or license a corporation to act as agent in the buying or selling of land in the state. As to public service corporations it is provided that they shall not hold "any land, or the title thereof, in any way whatever in this state, except as the same shall be necessary for the transaction and operation of its business as such public service corporation." These provisions definitely inhibiting the creation of certain corporations and curtailing the exercise of corporate power which otherwise could exist are, in themselves, evidence of the policy pursued.

Other corporations, inclusive of the defendant herein, are restricted in the manner of buying and acquiring of real estate "except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed."

This provision, instead of curtailing a power which but for the provision might obtain, as indicated in the case of other corporations mentioned, is, in fact, an affirmation of both the power and the limitation thereon as the same existed even at common law, which is "no corporation shall engage in any business other than that expressly authorized in its charter, nor shall it take or hold any real estate except such as may be necessary and proper for its legitimate business." (14A C.J. 508, citing Russell v. Topping, 21 Fed. Cas. No. 12,163, 5 McLean, 194; Gilbert v. Hole, 2 S. D. 164, 49 N. W. 1; see, also, 7 R. C. L. 564, and Rivanna Nav. Co. v. Dawsons, 3 Gratt. (Va.) 19, 46 Am. Dec. 183.

Those principles are axiomatic. The source of a corporation's power is its charter, lawfully granted. Where not prohibited by law it has the implied power to do those things necessary and proper to enable it to perform the purposes of its creation. (Derr v. Fisher, 22 Okla. 126, 98 P. 978, and cases cited in 14A C. J. 568, note 76.

So far as material here, the constitutional provision under consideration is an express and hence solemn definition of the limitation upon corporate ownership of land which, while affording warrant therefor, prescribes no legislative action providing for escheat. And with such interpretation it follows that the effect of the statute is to declare unlawful and make subject to escheat lands acquired and held by defendant corporation that are not "necessary and proper for carrying on the business for which it was chartered or licensed."

The effect of the constitutional limitation and the language of the statute making unlawful the acquiring of land in violation of such limitation is to make voidable and not void conveyances made to corporations in contravention thereof,

and voidable only in a direct proceeding by the state. In recognition of this rule, which is of general acceptation (19 C.J. S. 687, § 1113), this court, in State ex rel. Short, Atty. Gen., v. Benevolent Inv. & Relief Ass'n et al., 107 Okla. 228, 232 P. 35, 37 A. L. R. 190, quotes with approval from Louisville School Board et al. v. King, 127 Ky. 824, 107 S. W. 247, 15 L.R.A. (N.S.) 379, the following statement:

" 'The general rule is that, although a corporation may be disabled or forbidden by the organic or statute law of a state from holding land except for particular purposes, or from holding land beyond a prescribed limit or quantity, yet, if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the state alone; and that it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the state for that purpose; and this rule prevents the title of the corporation from being assailed by its grantor or grantee.' "

Incidentally, unless title did pass there would be no property right therein of the defendant to be subject to escheat. It was so held in Local Inv. Co. v. Humes, 51 Okla. 251, 151 P. 878, and State v. Benevolent Inv. & Relief Ass'n, supra.

In 14A C.J. 515, § 2404, it is declared:

"By the great weight of authority, when a corporation which may have power to acquire real or personal property for some purposes takes a conveyance, and the purpose for which the property was taken does not appear, the power to take and hold the same is to be presumed; and the burden of showing the contrary is upon one who alleges a want of power. In the absence of proof it will be assumed that the corporation acquired property for a lawful purpose."

And it is by reason of such presumption that in order to prevail the burden is upon the state to prove unlawful that which is presumed in law to be lawful. (German Ins. Co. v. Commonwealth, etc., 141 Ky. 606, 133 S. W. 793; Louisville School Bd. v. King, 127 Ky. 824,

107 S. W. 247, 32 Ky. L. 687, 15 L. R. A. (N.S.) 379, and others cited in 14A C.J. 562, § 2500.)

In support of the contention that the burden of proof is upon the defendant corporation to prove that the lands held are necessary and proper there is said in brief of plaintiff:

"The only power of a corporation to acquire such land (unless such corporation be a public service corporation) is by virtue of the exceptions stated in sec. 2, art. 22, of the Oklahoma Constitution. The prohibition is absolute, so far as rural land and real estate is concerned, but with a relaxation to the extent only as provided in the exception, which is: '. . . and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed.'

"And since the parts of the section preceding the exception are general in scope, no right to own land can be based upon the general provision. The defendant, then, must look to the terms of the exception. It authorized such ownership only when 'necessary and proper for carrying on the business for which' the corporation was chartered or licensed.' "

The theory urged is, there is a denial of power to own rural lands unless within the exception, hence proof that the lands held are rural is prima facie proof of an illegal holding and thus necessitating proof by defendant that such holdings were necessary, in order to overcome the presumption of illegality. And as illustrative of the applicable law the following is quoted from Thomas E. Basham Co. v. Lucas, Collector of Internal Revenue, 21 Fed. 2d 550:

". . Where the enacting clause of a statute is general in its language and objects, a proviso or exception therein must be strictly construed and will not be permitted to take any case out of the enacting clause which does not clearly fall within its terms, and any one claiming the benefit of such proviso or exemption must clearly and unmistakably establish his rights to its benefits, and this principle applies to taxing statutes."

The application here of the doctrine

so announced could properly be made only on the theory that the source of the corporation's power is to be found in the "2nd exception." Such is not the case. The source of the corporation's power is to be found in its charter and, as heretofore stated, is coextensive with the legitimate purposes of its creation. The inhibition against creating or licensing corporations to buy and sell real estate other than in incorporated communities, and against such corporations buying or selling rural lands, has no reference to corporations licensed for a different purpose, unless it were shown such corporations were holding lands not necessary for their legitimate purposes and in contravention of said inhibition.

The inhibition against holding more land than necessary and proper, which is applicable here, is in legal effect an express declaration of the limitation otherwise implied. The power of the corporation to acquire and hold land consistent with its purpose is unquestionable. The basis of this action is the state's contention that the property here involved is held independently of, or outside of and beyond the lawful purpose. Whether it is or is not is the issue here, and the state as plaintiff asserts the affirmative of the issue. To hold that the burden of proof is upon defendant is to indulge the presumption that the law has been violated, which the court will not do (Foreman v. Chicago, R. I. & P. Ry. Co., 181 Okla. 259, 74 P. 2d 350) and tends to render penal statutes self-enforcing, which is repugnant to justice. The presumption that obtains is to the contrary. For the purpose of trial the presumption is that the holding is lawful and such presumption continues until overcome by proof to the contrary. And in case of doubt, same should be resolved against the state (State v. Prairie Oil & Gas Co., supra). As declared by the Kentucky court in Louisville School Bd. v. King, supra:

"We will not impute to the makers of the Constitution, or to the Legislature, the degrading motive of intending by the provisions in question to enrich the state at the expense of its citizens."

In accord with the weight of authority, we held in State v. Benevolent Inv. & Relief Ass'n, supra, that where the offending corporation prior to the institution of escheat proceeding makes a bona fide transfer of the land, the purchaser thereof obtains good title thereto against the state in an escheat proceeding instituted after such transfer.

In addition to the state's contention that corporate ownership of land is limited to incorporated communities, which has already been considered, it is further contended that, if not so limited, the extent of the right that may be acquired for the purpose of exploration, development and operation is a leasehold estate, such as is reflected in the ordinary oil and gas mining lease, and that in no event can the corporation acquire title to the fee of lands, and that if such ownership is to be justified under any theory, it could only be by reason of the location thereon of permanent structures such as gasoline plants and lease houses, and then only to the extent of the area occupied.

The contention of the defendant is reflected in the following:

"Since a corporation may own the fee to land for carrying on the legitimate business of the corporation, instead of restricting its ownership to leases or easements or some estate less than the fee, the defendant had the same right to acquire the fee to lands having prospective oil and gas value and to retain such lands as long as their continued value existed, to the same extent as it might acquire oil and gas leases on prospective oil and gas lands."

As determinative of the right of the corporation to acquire the fee title and not be limited to leaseholds for the purpose of its operations, defendant quotes from Marland v. Gillespie, 168 Okla. 376, 33 P. 2d 207, as follows:

"This is a limitation, not upon the quality of the estate, but the quantity of land to be owned, which quantity is measured by the necessity of use considering the purposes for which the corporation is chartered. . . .

"We, therefore, answer the first contention by saying that there is no constitutional or statutory limitation upon the quality of estate acquired by a common carrier, by a voluntary conveyance unqualified in its terms, for the necessary and proper carrying on of the business for which the corporation was chartered."

Concerning the construction of the words "necessary and proper" as used in the statute by reference to the constitutional provision, reliance is placed on the following statement in Fletcher on Corporations, vol. 6, sec. 2788:

"Consideration should be given, in determining the right, to the object of acquisition, the intention with which the property is held, and the use to which it may be and is designed to be put, and the implied power of the corporation is to be limited to such real property as is reasonably necessary to such corporate purposes and uses.

"The property need not be necessary in the sense of indispensable, but it is sufficient if it is convenient and proper under the circumstances, and not inconsistent with the legitimate objects of the corporation."

Defendant quotes at length from McCulloch v. State of Maryland, 4 Wheat. 316, wherein the court was considering the meaning of the words "necessary and proper" as contained in the constitutional grant of power to Congress to enact laws, and in answer to the contention that same required a strict construction the court held to the contrary and that same required a more practical construction, the purport of which is to be found in the following excerpts therefrom:

"To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable."

And as an elaboration of the doctrine so announced there is quoted the following from Juilliard v. Greenman, 110 U. S. 421, 4 S. Ct. 122:

"By the settled construction and the only reasonable interpretation of this clause, the words 'necessary and proper' are not limited to such measures as are absolutely and indispensably necessary, without which the powers granted must fail of execution; but they include all appropriate means which are conducive or adapted to the end to be accomplished, and which in the judgment of Congress will most advantageously effect it."

And as a holding in accord with the quoted decisions, Board of County Commissioners of Garfield County v. Isenberg, 10 Okla. 378, 61 P. 1067, is cited. There, in considering the words "furnish necessary blank books, plats, blanks and stationery for clerks of the district court," and upon an issue whether the same authorized furnishing bar dockets, it was said:

"So far as we can ascertain, the courts have invariably held that the term necessary is not limited to such things as are absolutely indispensable, but includes all such things as are proper, useful and suitable for the purpose."

Also following the general rule is our decision in Kay County Excise Board v. A., T. & S. F. Ry. Co., 185 Okla. 327, 91 P. 2d 1087.

The doctrine is sound, and to the extent applicable same is controlling here. The question is whether the evidence negatives the prima facie presumption that the lands owned in fee are held under authority of this doctrine.

On such issue the evidence discloses the following material facts:

That most operations of the Texas Company are conducted under leases which usually grant to the lessee the right to use so much of the surface as may be required in the matter of prospecting, developing, producing and transporting the products produced upon the premises.

That ownership of the fee affords some further use than a lease, and that leases are taken as a rule because usually a lease is all that can be had, nothwith-

standing good judgment would require the ownership of the fee where possible.

Also that rights and uses enjoyed under ownership of the fee that would not obtain under a lease are the following: (a) The erection and operation of gasoline plant; (b) erection of buildings for occupancy by employees whose services are not limited to work on the tract; (c) a peculiar advantage of having employees' houses in vicinity of their work is that there is eliminated the distraction that follows from their residing a distance away with the necessary travel, and as a result it is better for both the men and the company because the men are satisfied and more efficient and more readily available in event of an emergency; (d) the erection of electric power lines, and (e) gathering lines whereby the production from other leases is converged on one tract.

And that the area of the surface that is subjected to use in the operations is largely determined by the number of producing wells thereon and operating methods. In addition to the equipment necessary to the operation of each well and caring for the production and waste therefrom, there may radiate from a central power plant metal rods whereby the wells are pumped which militate against other use of the surface.

Pertinent to defendant's contention the foregoing recital discloses one incontrovertible fact, which is, while ownership of the mineral interest or a lease thereon is necessary to acquire the right to produce, the ownership of the fee is not invariably necessary thereto. Such being true, more is required in law than mere ownership of the oil and gas rights to give rise to a necessity for ownership of the fee. Such fact, however, does not militate against the right of the corporation to acquire and hold the fee therein where under the facts such ownership, in contemplation of law, is necessary and proper for corporate purposes.

We conclude that the defendant corporation under its charter and the Constitution and laws of the state may for its necessities and uses hold and own (1) oil and gas and mineral leases such as ordinarily vest in the owner thereof the exclusive rights to prospect for and produce the mineral products therein referred to, and (2) mineral rights and interest in and under lands, such as ordinarily are conveyed by mineral grants or retained by specific mineral reservations in conveyances of land, and vest in the owner the same and some additional rights as leases above mentioned, and also relieve the owner thereof of some of the burdens incidental to the leaseholds above mentioned, and (3) that the right to own the leaseholds and mineral interests above referred to does not itself establish the right to hold fee-simple land titles, but (4) defendant has the right to hold fee-simple title in lands in cases where the same is specifically used and useful and proper and necessary in the general operation of defendant's business in this state.

We now refer to the details as to each of the 15 tracts or parcels or interest here involved.

Tract (a). The defendant owns the entire fee in this tract of 80 acres. Thereon are 25 wells, 14 lease houses for use of employees, large gasoline plant, vacuum plant, tanks, ponds, power houses, pipe lines, pull rods, electric power lines, etc. The trial court found the foregoing facts and others that increase the burden on the surface and concludes the finding as follows:

"As a whole, the land is rocky and sandy, has steep ravines, and is not susceptible to profitable agricultural use. That such property, land and real estate were and are necessary and proper for carrying on the business for which said original defendant, the Texas Company, and also the substitute defendant, the Texas Company, were chartered and were licensed in Oklahoma."

Reliance upon this finding is challenged by the state first upon the ground the existence of the right of the company to acquire title cannot be predicated on the smallness of the value to the owner,

and further by saying the various rights exercised could have been obtained by leases. It is true that the right to secure title cannot be predicated upon the smallness of the value to the then owner, but even as to this it cannot be denied that where the right exists both economy in the operation of the enterprise and respect for continued existence of farm values are promoted by that character of purchase and consequently commendable as a matter of the corporate policy. Furthermore, the character of the land and its value are material to the propriety of the purchase. And the propriety is determinable from the standpoint of need, which is the only basis of the right to acquire.

As to the possibility that those rights enjoyed which were beyond the grant of an ordinary oil and gas lease could have been secured by further leases, it need only be said the law makes no such requirement, nor no prescription as to the method. The sole question is whether the acquisition of the fee, in contemplation of law, was actually fairly and properly needful from the standpoint of the proper operation of a lawful enterprise. Such clearly appears from the facts and the court's finding, and it follows the judgment escheating this tract was erroneous.

Tract (b). Here involved are two tracts of 80 acres each held in fee, not adjoining, but sufficiently close to be operated from a single power. These tracts at the time of the institution of the action had seven and eight producing wells respectively, and apart from the absence of gasoline plant that had been dismantled, differed in extent of use only in the matter of degree from that of tract (a). The finding of the trial court as to their use status from the standpoint of the defendant's needs is the same as made on tract (a) and the question thereon deserves and is given like disposition here. This tract likewise was not subject to escheat and the trial court judgment to the contrary was erroneous.

Tract (c). This tract is particularly described as lots 3 and 4 or north half of northwest quarter of section 6, twp. 7 N., range 12 E.

It is stipulated that defendant is owner of a one-half undivided interest in the fee title subject to pipe line right of way; that there has never been any production thereon, though there had been drilled thereon a dry hole. It appears from the evidence that the hole in question, the only effort for production, was drilled previous to 1926.

In view of what has been previously said there exists no lawful basis for the ownership of this land except to the extent of the mineral rights or oil and gas rights that passed with the conveyance of the fee to the defendant, and to that extent only may it assert and retain title therein. Except to the extent of such mineral rights or oil and gas rights so acquired, and such incidental rights as may be reasonably necessary to produce, save and transport the oil and gas from the premises, the judgment of the trial court is correct in its conclusion.

Tract (d). The fee title to this, a tract of 160 acres, was acquired by defendant in 1926. Previous to the acquisition there had been ten producing wells. At the time of the purchase there was no production and the wells had been abandoned. After the defendant company bought the tract it granted successive oil and gas leases thereon. Under the last lease, granted to H. V. Daniels and dated May 29, 1937, three wells were drilled, which are yet producing.

In view of what has been said these facts speak for themselves. Any occasion to even indicate that there was need for the defendant corporation to own and hold fee is negatived by the situation at the time of the purchase. Any theory that the defendant considered ownership of the fee title necessary to production is negatived by the fact it gave only a lease to the one assuming the risk incident to obtaining production, and who as between the two would have need of such ownership if such need should exist. However, since the mineral interest or oil and gas rights are

severable from the fee and their acquisition is not inhibited, the defendant is entitled in law to retain the same together with such incidental rights in the surface as may be reasonably necessary to produce, save and transport the products from the premises, subject, however, to rights outstanding under the existing lease. Our conclusion here is the same as in the case of the preceding tract (c).

By stipulation of the parties it appears that the defendant is the owner of either all or some undivided interest in the oil and gas and other mineral interests in tracts (e), (f), (g), (h), (i), (j), (k), (1), (m), and (n).

As hereinbefore stated, and under the evidence, there is no constitutional inhibition against such ownership, and the trial court erred in adjudging such interests to be escheated to the State of Oklahoma.

The judgment of the trial court is reversed, and the cause is remanded, with directions to render comprehensive judgment not inconsistent with the views herein expressed.

HURST, C.J., DAVISON, V.C.J., and OSBORN, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur. RILEY, J., dissents.

---

RILEY, J. (dissenting). By constitutional prohibition (sec. 2, art. 22, Const. of Okla.) a corporation doing business in this state shall not *"buy, acquire, trade or deal in"* rural real estate *"except such as shall be necessary and proper"* for carrying on the business for which such corporation was chartered and licensed.

The majority deem the constitutional prohibition not self-executing and rely on State v. Prairie Oil & Gas Co., 64 Okla. 267, 167 P. 756, Parwal Investment Co. v. State, 71 Okla. 121, 175 P. 514, Sheridan Oil Co. v. Superior Court, Creek Co., 183 Okla. 372, 82·P. 2d 832, and the rule stated in 10 R.C.L. 607. The rule stated constitutes a funda-

mental error, destructive of the public policy which is directed against the evils of corporate and alien ownership of land.

It will be readily observed from the text of 10 R.C.L. 607, supra, that the general rule stated is based upon "the statute laws of certain states" which, unlike the constitutional prohibition, are not directed against the acquisition of lands by corporations, but, to the contrary, prohibit corporations from "holding" such lands beyond a prescribed period of time except from proper purposes.

While section 1636, O.S. 1931, of the statutory laws in Oklahoma, applicable in the case at bar, prohibits a corporate holding of rural real estate not within the exception, there is a paramount prohibition of Constitution which by its terms denies the corporate capacity to acquire rural lands unless within the exception provided.

State v. Prairie Oil & Gas Co., supra, relied upon by the majority, constitutes no basis for the rule of nonself-execution as applied to the constitutional prohibition, for, in that case, the lands involved were lawfully acquired prior to statehood. The issue there involved was not the constitutionally prohibited acquisition of the land, but the holding of lands lawfully acquired beyond a period of time specified by the statute.

The obiter dictum stated in the body of the opinion constituted the fundamental error in Parwal Investment Co. v. State, supra. In the Parwal Investment Co. Case rural lands were corporately acquired after statehood, contrary to the constitutional prohibition. This court, in that case, erroneously relied upon Louisville School Board et al. v. King, 127 Ky. 824, 107 S.W. 247, 15 L.R.A. (N.S.) 379, and it is to be observed that the present majority opinion likewise adverts to the rule prevailing in Kentucky. It is noteworthy that the constitutional prohibition in Kentucky, like the statute in Oklahoma, is directed, not against the corporate acquisition of land, but merely as against

the corporate holding of such land for a period of time longer than five years under penalty of escheat.

Sheridan Oil Co. v. Superior Court, Creek Co., 183 Okla. 372, 82 P. 2d 832, without examination, merely reiterated the error.

In the case at bar, it is disclosed that since statehood title to rural lands involved was sought to be vested in the Texas Company as result of conveyances to the corporation. Some of these conveyances were executed in the year 1927 and others were sought to be acquired by reason of a merger with the parent corporation. If title to the lands was in fact vested in the corporation, necessarily the acquisition was under the exception to the constitutional prohibition, i. e., acquisition of the lands was necessary and proper for the corporate enterprise as measured by the state's public policy. Otherwise, the constitutional prohibition is dormant, meaningless, and dependent upon legislative discretion in the enactment and judicial sanction in approval of particular procedure for escheat and a reiteration of grounds upon which escheat may be based. Thus, despite denial by basic law, a corporation is permitted, by operation of law, to do the very thing which is against the policy of the law. This view is expressed in State ex rel. Short v. Benevolent Investment & Relief · Ass'n, 107 Okla. 228, 232 P. 35, 37 A.L.R. 190.

The effect of the nonself-executing rule is that by violation of the prohibition, constitutionally provided, title to the lands would not vest at once in the state but remain imperfect and inchoate until established by decree. The question may be illustrated by construction of an analogous provision:

"No alien or person who is not a citizen of the United States shall acquire title to or own land in this state." Sec. 1, art. 22, Const.

Except for disposition of lands acquired by aliens, as a result of inheritance, within a limited time, there is no room in the simple and sweeping mandate of the Constitution for an abeyance or suspension as to the title of lands sought by purchase to be vested in an alien. The state, as the ultimate owner, is in effect the grantee. Remedial expedients, such as ejectments or inquest, suffice to establish the fact of an escheat and record the title of the state. The fact, and not the record, is the origin of the state's title to such lands. And while it is true that to establish an escheat at common law "an entry or other seisin was once required," 2 Bl. Com. ch. 15, p. 245, yet seisin and title should not be confused.

At the common law, an inquest in such instances was merely a proceeding to ascertain the title of the Crown, but it was never an essential condition to the vesting of title, because, otherwise, a freehold would be in suspense, "which may not be". Cardozo; Re Carnegie Trust Co., infra.

Therefore, the failure to mention escheat in the constitutional prohibition, or to provide particular procedure by statute to effect an escheat, is wholly immaterial to the preservation and enforcement of the public policy denoted by the Constitution. Upon the happening of the event and the existence of facts constituting an escheat, the state possesses a right in land which, upon resistance, may not constitute a possession in deed and consequent power to grant until established by procedure. But such procedure is supplied by the usual and customary remedies at law. Ejectment is one of these and it may be joined with an action to establish and quiet title. These provisions of the Code are supplemented by procedure of the common law existing in aid of the statutes.

Entry upon lands is unnecessary to perfect title of an heir and it is likewise unnecessary to establish the right of escheat in the state. There is no distinction under modern law between the right of the state upon (1) death of a citizen seized and possessed of land, without heirs or devisees, or (2) a prohibited attempt by conveyance to vest title to lands in an alien, and (3)

the right of the state, in like circumstances, relating to a constitutionally prohibited corporate act attempting to "buy, acquire, trade or deal in" rural real estate.

Neither an entry upon land nor a judgment of court in such circumstances is necessary to the existence of the state's right. McCormack v. Coddington, 184 N.Y. 467, 77 N.E. 979; Re Carnegie Trust Co., 206 N.Y. 390, 46 L.R.A. (N.S.) 260.

The judgment does not create the title which it registers.

In all instances, however, where the title is defeasible, i.e., good until defeated, if in circumstances suggested by the statute prohibiting holding of lands lawfully acquired by a corporation, when no longer necessary or proper for the corporate enterprise, or the holding of lands inherited by an alien beyond the time prescribed for disposition of the land, there is need for an adjudication to establish the wrong as measured by the public policy and the state's right which ensues upon establishment of the wrong. Wallahan v. Ingersoll, 117 Ill. 123, 7 N.E. 519, 23 A.L.R. 1237.

I do not agree that the exception contained in the constitutional prohibition constitutes the grant or "affirmation of . . . the power" relating to the corporate acquisition of rural real estate. The source of the corporation's power to acquire rural lands does not spring from its charter, for the corporate aims are limited by the public policy. Upon inquiry and determination that acquisition of lands was not necessary and proper for corporate purposes, the title of the state relates back to the time of the unlawful acquisition. McCaughal v. Ryan (N.Y.) 27 Barb. 376. So that if the corporation acquired land in contravention of law, purporting to act under the exception contained in the constitutional provision, the burden is cast upon it to defend the acquisition as of the time of acquisition, and if the corporation fails to do so, the judgment should find that while the

corporation has possession, it never acquired title because of corporate incapacity, effected by the constitutional prohibition.

Under the general rule prevailing in other jurisdictions, an alien, in the absence of law to the contrary, may take land by purchase and hold the same against everybody but the state; but, under the general rule elsewhere prevailing, an alien can never inherit. Therefore, the land which by rules of relationship goes to the alien, if he were competent to take, immediately vests in the state without the necessity of judicial proceedings to effect the result. In short, under the general rule, the alien may take by act of party (deed) but never by operation of law (inheritance). The underlying reason is because the law will be deemed to do nothing in vain and therefore it will not cast a descent upon one who cannot by law hold the estate. Wilbur v. Tobey, 16 Pick. 177; 15 L.R.A. (N.S.) 380; Fairfax v. Hunter, 7 Cranch, 603, 3 L. Ed. 453.

But in Oklahoma the reverse is true. By Constitution, sec. 1, art. 22, an alien's acquisition of land by purchase is not defeasible; it is prohibited. Title never vests; it fails, and the judgment relates back to the failure. Re Melrose Avenue, 234 N.Y. 48, 136 N.E. 235, 23 A.L.R. 1237.

And so it is, as applied to corporate acquisition of rural lands not necessary or proper for the corporate enterprise at the time of an attempted acquisition of title to the lands.

Instances of lawful corporate acquisition of lands, which became no longer necessary or proper for the corporate enterprise, are fully covered by the statute prohibiting a corporate holding of such lands beyond a specified period of time.

Marland v. Gillespie, 168 Okla. 376, 33 P. 2d 207, is the foundation and basis of the majority opinion. The rule stated in the Marland Case is obviously in error. It relates to the corporate

ownership of the fee, rather than an easement for right-of-way purposes. That error was brought to attention in Corbyn v. Oklahoma City, 197 Okla. 483, 172 P. 2d 384 et seq. This court, in the Marland Case, erroneously avoided the decisions of Kansas as being based on statutes "not found in the Oklahoma statutes", whereas the statutes of Oklahoma and those of Kansas are without substantial difference. It also appears that the lands involved in the Marland Case were acquired by the railroad corporation at a time long prior to statehood, and therefore at a time when the constitutional provision did not affect the title conveyed. But the constitutional prohibition, if properly entering into the consideration, should have been deemed merely as a subsequent enactment, harmonious to the Territorial statute existing, restricting the capacity of the railroad corporation to take, for railroad right of way, the fee or title extended beyond that denoted by "right of way", which signifies, in law, a perpetual easement or public thoroughfare which reverts when the public use is ended. The public policy relating to such conveyances for the purpose expressed by section 24, art. 2, Const. of Okla., restricting the capacity of common carriers to take for right of way *without the consent of the owner* the fee of the land and provided the fee of the land so taken shall remain in the owner, subject only to the public use, seems to have confused the result reached and led to an opposite holding in the Marland Case, contrary to the existing statute limiting the corporate capacity to acquire fee-simple title and contrary to authorities and decided cases.

The phrase "necessary and proper," as employed in the exception to the constitutional prohibition against corporate acquisition of rural real estate, has variety in construction and application, dependent upon whether the phrase is employed in a grant or restriction in power.

Instances of construction of the phrase "necessary and proper" involved in a grant of power are recited in the majority opinion, but even in such instances as recorded in McCulloch v. State of Maryland, 17 U.S. 316, 4 L. Ed. 579, consistency "with the letter and spirit of the Constitution" measured the grant. Plaintiff in error has sought, and apparently secured, a construction equivalent to the terms "useful and convenient", so that the corporation is not restricted under the public policy from a choice of means in acquiring petroleum and its products, when something less than a fee would serve the purpose. The majority opinion indulges a rule of usefulness and suitability to the corporate enterprise. It may be noted in Preston County Coke Co. v. Elkin Coal & Coke Co., 82 W. Va. 590, 96 S.E. 973, where only the surface of land was sought for mining operations, that limited estate was found reasonably appropriate and therefore necessary and proper, but as to the fee in land outside of cities and towns and additions thereto, consideration should be given to the use to which the property is designed to be put, and while the extent of the title acquired need not be necessary in the sense of being indispensable to the legitimate objects of the corporation (Fletcher on Corporations, vol. 6, sec. 2788), the corporate right to acquire or hold the fee in rural real estate ought also to be measured by the public policy, particularly where these powers sought to be exercised are "precluded by restrictions and exceptions specified in the Constitution". Knox v. Lee, 79 U.S. 457, 20 L. Ed. 287.

But assuming that "suitable" or "useful" or "implying an actual need", as stated in the rule adopted in the case at bar, are synonymous with the word "necessary" employed in the exception, it does not follow that it would be proper for the defendant corporation to transgress the spirit and purpose of the public policy by acquiring fee-simple title to rural lands, based merely upon needs of the corporation nor suitability of the land. "Proper," says the Kentucky court, in Griswold v. Hepburn, 63 Ky. 20, is not synonymous with

"necessary" nor a superfluous addition to it, as it would be if the import were merely fitting or appropriate or adaptable. The true test is whether the preferred means is congenial with the spirit and purpose of the Constitution.

No one would deny to a corporation, engaged in the oil business, the right to acquire or hold a leasehold estate for the purpose of production of petroleum and its products. Certainly such an interest in land is necessary and proper. It is equally certain that a future corporate ownership of land is denied when lands lawfully acquired are not presently "required for use of the corporation". Oklahoma Natural Gas Co. v. State ex rel., 187 Okla. 164, 101 P. 2d 793. The spirit and purpose of the constitutional prohibition exists to deny the corporate capacity to acquire rural lands "for any purpose" except as the ownership of land may be incidental to the legitimate corporate ends.

Thus it is believed mere relief, to the corporate ownership of a leasehold estate in lands, from the burdens incidental to the lease under which the corporation may operate, does not justify corporate ownership of royalty such as ordinarily conveyed by mineral grants or retained by a specific reservation in the conveyance of land by the corporation, for the rule stated contemplates corporate ownership of rural lands, whereas the constitutional prohibition is directed against the capacity of the corporation to buy, acquire, trade or deal in such lands.

It is to be observed that under the majority opinion, as to tract (c), it is said "there exists no lawful basis for the ownership of this land except to the extent of the mineral rights or oil and gas rights that passed with the conveyance of the fee to the defendant", the judgment of the trial court, with the exception noted, is held to be "correct in its conclusion". Therefore, it is apparent that an escheat is directed. In view of the fact that an escheat has been directed, it would seem that either the rule that the constitutional prohibi-

tion (sec. 2, art. 22) is not self-executing is in error, or sufficiency of the constitutional prohibition to effect an escheat of corporately owned rural lands is wholly immaterial, to the result of effecting an escheat in contravention of the public policy in the case at bar. However, in view of the legislative repeal of section 1631, O.S. 1931, ch. 46, S.L. 1937, 18 O.S. 1941 §86 et seq., and the substitution of a tax or character of license upon rural lands corporately held, it would seem that preservation of the public policy denoted by the constitutional prohibition would require a decision upon the issue presented as to whether the repealed statute providing for the escheat of "land" held in contravention of statute embraces the corporate acquisition of real estate in contravention of the public policy, for, in view of the repeal of the statute providing procedure and the majority determination that the constitutional prohibition is not self-executing, it is evident that under the present law the escheat of land corporately acquired in contravention of the public policy has ended.