WILLIAM EINSTEIN

v.

RARITAN WOOLEN MILLS.

[Submitted May 11th, 1908.    Decided May 21st, 1908.]

1. Where a special charter provides that the capital stock may be increased from time to time to any sum, not exceeding a sum named, this limitation on the power of the company is a part of the contract existing between the stockholders themselves and between stockholders and the corporation, and its abrogation against the objection of a stockholder violates the federal constitution, which prohibits the impairment of the obligation of contracts.

2. The decisions of the supreme court of the United States are the final authority on questions arising under the constitution prohibiting the impairment of the obligation of contracts.

3. The creation of preferred stock by a corporation not authorized by the special act incorporating it, nor under general laws existing at that time, and against the objection of a shareholder, violates the obligation of the contract between the corporation and shareholder.

4. Act March 22d, 1860 (*P. L. p. 603*), providing that manufacturing corporations might create two kinds of stock, viz., general stock and special stock, the latter subject to redemption with a fixed half yearly sum or dividend, not exceeding four per cent. before any dividends should be set apart or paid on the general stock, was repealed on April 7th, 1875 (*Rev. Stat. 1874-75 p. 10 § 25*), without any reservation of any rights acquired under it, and, even if such act were a part of the charter of a company organized under a special act, it would not authorize the creation of preferred and common stock under a plan contemplating dividends at the rate of seven per cent.

5. Act April 6th, 1908 (*P. L. p. 127*), authorizing the creation of new stock by corporations, merely gives the consent of the state that the stockholders may do so if they all agree, but, if all do not agree, such act cannot be held to be a portion of the charter of a corporation organized under a special act or as an amendment thereto.

On bill for injunction.

*Mr. Richard V. Lindabury,* for the complainant.

*Mr. Nelson Y. Dungan* and *Mr. Edward Lauterbach* (of the New York bar), for the defendant.

HOWELL, V. C.

The Raritan Woolen Mills was incorporated by a special act of the legislature of New Jersey entitled "An act to incorporate the Raritan Woolen Mills," which act was approved March 23d, 1869, and is found in the laws of that year at *p. 536.* The charter provides that the capital stock shall be $100,000, "with the privilege of increasing the same from time to time to any sum not exceeding $250,000." Capital stock to the amount of $150,000 has been issued and is outstanding. The directors have passed a resolution providing for the amendment of the company's charter by increasing the total capital stock of the company to $525,000, $150,000 of which shall be first preferred cumulative seven per cent. stock, and the remainder common stock. The resolution further provides that the present outstanding common stock of the corporation shall be converted into the first preferred cumulative seven per cent. stock which the resolution provides for; so that when the change shall have been effected the capital stock of the corporation shall consist of $150,000 of preferred stock and $375,-000 of common stock. The directors have called a meeting of the stockholders to vote upon the adoption by them of the resolution, and the complainant, who is one of the stockholders of the corporation, now files his bill to enjoin the corporation, its officers and directors, from increasing the capital stock or issuing any preferred stock or converting the present outstanding issue of $150,-000 of common stock into a like amount of preferred stock, and restraining the stockholders from voting at the stockholders' meeting in favor of the directors' resolution. Two questions are raised—*first,* the power of the corporation without the universal consent of its shareholders to increase the amount of its capital stock; *second,* the right of the corporation to issue preferred stock and compel its substitution for the present outstanding common stock without the consent of all the shareholders. The charter of the corporation confers upon it the general powers and subjects it to the general restrictions contained in the Corporation act of 1846 (*P. L. 1846 p. 16*), and it may be sufficient, without further reference to the statute, to say that it contains no specific authority to a corporation organized under it to do any of the things that are attempted to be done in this case. The

40

charter provides in so many words that the capital stock may be increased from time to time to any sum *not exceeding* $250,000.

This, I take it, is a limitation upon the power of the company which is part of the contract existing between the stockholders among themselves and between the stockholders and the corporation itself, and that it cannot be abrogated or avoided by the corporation or by its directors, or by any majority, however large, of its stockholders against the objection of the holder of a single share. This is on the ground that such action would violate that provision of the federal constitution which prohibits the states from passing any laws which impair the obligation of contracts. The decisions of the supreme court of the United States are the final authority on questions arising under this provision of the constitution, because they are necessarily federal questions. In *Chicago City Railway* v. *Allerton, 18 Wall. 233* (*1873*), the question which is now before the court arose for final decision in the supreme court of the United States. The appellant was a street railway company having a capital of $1,250,000, which it proposed to increase to $1,500,000. The appellee, Allerton, objected and filed his bill to prevent the increase. The charter of the corporation provided the capital stock should be $100,000, and that this might be increased from time to time at the pleasure of the corporation, and that all corporate powers of the corporation should be vested in and exercised by the board of directors and such officers and agents as the board should appoint. The board of directors attempted to make the increase by a mere resolution of that body. Mr. Justice Bradley, without attempting to decide questions which arose under the constitution and laws of the State of Illinois, affirmed the decree in favor of the complainant below upon the broad ground that a change so organic and fundamental as that of increasing the capital stock of the corporation beyond the limit fixed by the charter could not be made by the directors alone unless expressly authorized thereto. He says:

"Authority to increase capital stock of a corporation may undoubtedly be conferred by a law passed subsequent to the charter, but such a law should regularly be accepted by the stockholders; changes in the purpose and object of an association or in the extent of its constituency or membership involving the amount of

its capital stock are necessarily fundamental in their character and cannot, on general principles, be made without the express or implied consent of the members." This case has been followed, and its authority has never been questioned. Its doctrine followed in *Scoville* v. *Thayer, 105 U. S. 143,* and in *Bank* v. *Railroad Company, 13 N. Y. 599; Railroad Company* v. *Schuyler, 34 N. Y. 30; Kent* v. *Quicksilver Mining Co., 78 N. Y. 182.* I quote from the opinion of Judge Folger in that case: "There is a power in this charter to alter, amend, add to or repeal, at pleasure, by-laws before made. It is argued from this that it was in the power of the corporate body, in due form and manner, to alter the by-laws which had fixed the amount of the capital stock and the number and relative value of the shares thereof. The power to make by-laws is to make such as are not inconsistent with the constitution and the law, and the power to alter has the same limit, so that no alteration could be made which would infringe a right already given and secured by the contract of the corporation. Nor was the power to alter, to the extent of affecting the contracted relative value of a share, reserved when the share was sold to the stockholder, so as to enter into and form a part of the contract. An alteration is a *pro tanto* repeal; but no private corporation can repeal a by-law so as to impair rights which have been given and become vested by virtue of the by-law afterwards repealed."

The reasoning of these cases goes to the question of the violation of the contract as alleged by the complainant, and it applies to the other matters mentioned in the resolution, namely, the creation of preferred stock and the compelling of the present shareholders to surrender their common stock and accept preferred stock in lieu thereof. It is true that at the time of the creation of this corporation there was an act in force (*P. L. 1860 p. 603*), providing that manufacturing corporations might create two kinds of stock, viz., general stock and special stock, the latter at no time to exceed half the capital paid in, and subject to redemption with a fixed half yearly sum or dividend not exceeding four per cent. before any dividend should be set apart or paid on the general stock. This act was repealed on April 9th, 1875, without any reservation of any rights acquired under it, and, at any rate,

if it were a part of the company's charter it would not authorize the present action, for the reason that the rate of dividend provided for is four per cent., while the present plan contemplates dividends at the rate of seven per cent.

All the other provisions of our statutes relating to the creation of preferred stock have been passed since the Raritan Woolen Mills was organized as a corporation, and it not appearing in the case that these subsequent provisions have been accepted by the shareholders as amendments to the charter, I feel obliged to hold that there is no authority for the creation of preferred stock without the consent of every shareholder. The same line of argument applies to the attempt of the directors to convert the present common stock into preferred stock. It is said on behalf of the company and its directors that the complainant cannot be compelled to convert his own stock into preferred stock, and that he therefore need not do it; that he may continue to hold it as common stock, and that inasmuch as one share of stock is like another, it can make no difference to him whether he holds his shares which have been heretofore authorized or whether he holds shares which shall be authorized by virtue of the resolution in question. The reasoning of Mr. Justice Bradley in the *Allerton Case* above cited seems conclusive on this point. He says: "Second, as it respects the constituency or capital and membership. This is the next most important fundamental point in the constitution of a body corporate; to change it without the consent of the stockholders would be to make them members of an association in which they never consented to become such. It would change the relative influence, control and profit of each member; even when the additional stock is distributed to each stockholder *pro rata* it would often work injustice, because some of the stockholders might be unable to take their respective shares and might thus lose their relative interest and influence in the corporate concerns." I take it that when Mr. Justice Bradley speaks of the consent of the shareholders he means the consent of every shareholder, and that a mere majority, however large, would not have the power to interfere with the rights and property of the minority.

My attention is called by the defendant to an act of April 6th, 1908 (*P. L. 1908 p. 127*), which on its face and by its terms,

permits to be done the very thing that is sought to be accomplished in this case. But I am unwilling to accede to this. I must hold that this act is merely the consent of the state that the stockholders may, if they all agree, do the things which are provided for in that act. But if all the stockholders do not agree the act cannot be held to be a portion of the charter of the corporation or an amendment thereto. This is specifically held in *Kean* v. *Johnson, 9 N. J. Eq. (1 Stock.) 417; Zabriskie* v. *Hackensack Railroad Co., 18 N. J. Eq. (3 C. E. Gr.) 178; Black* v. *United Railroad and Canal Companies, 24 N. J. Eq. (9 C. E. Gr.) 455; Mills* v. *New Jersey Central Railroad Co., 41 N. J. Eq. (14 Stew.) 1,* and many other cases which have engrafted this doctrine into our law so deeply as to be beyond disturbance.

The motion for the injunction should therefore prevail.