## YUKON MILL & GRAIN CO. v. VOSE et al.

No. 32797. March 8, 1949.
Rehearing Denied May 17, 1949.

*206 P. 2d 206.*

Herbert K. Hyde and Lee Williams, both of Oklahoma City, for plaintiffs in error.

Rainey, Flynn, Green & Anderson, of Oklahoma City, for defendants in error.

HALLEY, J. The defendant, Yukon Mill & Grain Company, a corporation, was organized and received its charter from the State of Oklahoma on January 10, 1921, and the plaintiffs are the owners and holders of 1,000 shares of preferred stock of said corporation, which were issued to them in February, 1921, of the par value of $100 per share. The preferred stock contained the following provisions:

"The owners of this preferred stock are entitled to receive and the company is bound to pay out of its surplus or net earnings a dividend at the rate of, but never exceeding, ten per cent per annum, cumulative from and after the 15th day of January, 1921, payable semi-annually, before any dividend shall be set apart or paid on the common stock.

"In case of liquidation or dissolution or distribution of the assets of this company, the owners of this preferred stock shall be paid the par value of their preferred shares and the amount of dividend accumulated and unpaid thereon, before any amount shall be distributed among the owners of the common stock."

No provision was made in the stock for its redemption prior to dissolution of the corporation, and neither the corporation charter nor the by-laws made any such provision. The Oklahoma statutes at the time this stock was issued did not provide for the redemption of preferred stock. In March, 1921, subsection 6 of section 1223, of Revised Laws 1910 (same as 18 Okla. St. Ann. §15) was amended to provide that preferred stock may, if desired, be made subject to redemption at such time or times and at such prices, no less than par, as may be expressed in the Articles of Incorporation or in an amendment thereof.

The only provision for the extension of the charter of a corporation at the time this corporation was originally chartered was Title 18 O.S.A. §18. This applied to corporations chartered for manufacturing and merchandising purposes, but in 1927, provision was made for the renewal of the charter of any corporation organized for a fixed term of years (Title 18 O.S.A. §1). No one has raised the question as to whether or not the defendant corporation had a right to extend or renew at the end of the first 20-year period of its existence, but there is nothing to indicate that the rights of the preferred stockholders were to be cut off during the life of the corporation.

The company was chartered on January 10, 1921, and had a corporate life of 20 years. At the end of 20 years, through oversight and inadvertence, the corporation charter was not extended prior to January 10, 1941, but on the 26th day of June, 1942, the corporate charter was renewed and extended for a period of 20 years from January 10, 1941.

On June 11, 1934, the by-laws of the Yukon Mill & Grain Company were amended to provide for the redemption or retirement of the company's preferred stock. On October 1, 1943, the directors of the Yukon Mill & Grain Company adopted a resolution calling in for redemption all issued and outstanding preferred stock. On October 15, 1943, the plaintiffs filed suit in cause No. 13287 in the district court of Canadian county, Oklahoma, to restrain the defendants from carrying out the resolution for the redemption of the outstanding preferred stock, and there was a judgment by the district court of Canadian county restraining defendants from taking any action toward the redemption of the preferred stock. On June 12, 1945, Amended Articles of Incorporation were filed, and on June 15, 1945, a resolution was passed by the directors calling for the redemption of the outstanding preferred stock, and in pursuance of said resolution the defend-

ant corporation deposited $105,000 in the Yukon National Bank for the purpose of retiring and redeeming all preferred stock at $100 per share, plus dividends accumulated thereon of $5 per share as of July 1, 1945, and due notice of said resolution was given to the plaintiffs by registered mail, and the plaintiffs filed this action to restrain the defendants from proceeding further with the redemption of the preferred stock. Judgment was entered by the trial court in favor of the plaintiffs on March 1, 1946.

It is a well-settled principle of corporation law that a corporation has no inherent power to redeem its preferred stock and may not do so unless expressly authorized by statute. 11 Fletcher's Cyclopedia of the Law of Private Corporations (Perm. Ed.) Sec. 5309; Star Publishing Co. v. Ball, 192 Ind. 158, 134 N.E. 285. It is conceded by all parties concerned that when this corporation was originally chartered on January 10, 1921, there was nothing in the statutes of Oklahoma, or in the charter, or in the preferred stock itself, which provided for its redemption.

The defendants contend that they had the right to amend the charter and by-laws of the defendant corporation to provide for the redemption of the preferred stock by virtue of the amendment of section 1223, Okla. R. L. 1910, which is chapter 28, p. 37, sec. 2, Laws of 1921, now Title 18 O.S.A. §15:

"Sixth. If there be capital stock, its amount and the number of shares into which it is divided; and every corporation shall have power, by so providing in its articles of incorporation or an amendment, to create two or more classes of stock with such designations, preferences and voting powers, restrictions or qualifications thereof as shall be stated and expressed in the articles of incorporation or an amendment thereof; provided that the holder of no stock shall be prohibited from voting upon all questions pertaining to the increasing of capital stock or bonded indebtedness of the corporation. Any and all classes of preferred stock may, if desired, be made subject to redemp-

tion at such time or times and at such prices, not less than par, as may be expressed in the articles of incorporation or an amendment thereof, and the holder of any preferred stock shall be entitled to receive and the corporation shall be bound to pay to him dividends at such rates and on such conditions and at such times as may be stated in the articles of incorporation, or amendment thereof, before any dividend shall be set apart and paid on the common stock; and, when any such preferred dividends shall have been paid or set aside as in the articles of incorporation provided, a dividend upon the common stock may be paid out of the remaining surplus or net profits of the company. Such preferred dividends may be made cumulative and in no event shall the holder of preferred stock be personally liable for the debts of the corporation; but, in case of insolvency, its debts or other liabilities shall be paid in preference to the preferred stock."

But that amendment made no effort, even if it could have, to change charters and by-laws of corporations already existing, and a corporation could have been created after the passage of the 1921 law and would not be required to make any provision for the redemption of its preferred stock, because the statute in itself made it discretionary with the corporation as to whether or not the preferred stock would be subject to redemption. There is nothing in the Act itself that shows any intention to give the right to any corporation to amend its Articles of Incorporation so as to make the right to redeem apply to preferred stock issued before the passage of the Act, even if such power should be in the Legislature. The question of the corporation's right to redeem under a statute passed after the issuance of the preferred stock has not been passed on by this court, but the better-reasoned cases from other states in similar situations hold that a corporation does not have the power to change its obligations to its stockholders. Sutton v. Globe Knitting Works, 276 Mich. 200, 276 N. W. 815, 105 A.L.R. 1447; Koeppler v. Crocker Chair Co., 200 Wis. 476, 228 N.W. 130; Breslav v.

New York and Queens Electric Light & Power Co., 291 N.Y. Supp. 932, affirmed at 7 N.E. 2d 708, 273 N.Y. 593; Yoakam v. Providence Biltmore Hotel Co. (D.C.) 34 Fed. 2d 533; Einstein v. Rankin Woolen Mills, 74 N.J. Eq. 624, 70 A. 295; Wheatley et al. v. A. I. Root Co. et al., 147 Ohio St. 127, 69 N.E. 2d 187; Keller et al. v. Wilson & Co., 21 Del. Ch. 391, 190 A. 115; State ex rel. v. Perham (Wash.) 191 P. 2d 689.

We adopt the view that whether or not a power to amend a corporate charter reserved to the state by statute or Constitution protects a proposed change in the obligation of a corporation to its stockholders, authorized under enabling legislation enacted subsequent to the issuance of the corporate stock affected, depends upon whether the proposed change is directed toward those features of the contract in the corporate charter in which the state has an interest, or relates to those features dealing with the private rights between the stockholders and the corporation, or between the stockholders inter se; and we hold that the reservation of power to amend corporate charters is applicable only to those features of the contract affected with public interest, and the private rights of the stockholder as against the corporation or his fellow stockholders are protected from alteration by the inhibition against the impairment of contracts. Note 105, A.L.R. 1453, Garey v. St. Joe Mining Co., 32 Utah, 497, 91 P. 369, 12 L.R.A., N.S., 554; Sutton v. Globe Knitting Works, supra.

We quote with approval the following:

"The power of alteration or amendment is not without limit and does not invest the Legislature with unrestricted control over the charter of the corporation created by it. . . .

"The reserved right of amendment, alteration or repeal, whether contained in a statute or constitutional provision, must be exercised in subjection to the various other constitutional commands and restrictions. Due process of law

must be observed, and there must be no denial of the equal protection of the laws, nor impairment of the obligation of contract." Fletcher's Encyclopedia of Corporations (Perm. Ed.) vol. 7, §§ 3680, 3681.

And vol. 13, sec. 5776, of same work:

"The true view is that the power to alter, amend or repeal charters is reserved by the state 'solely' for the purpose of avoiding the effect of the decision in the Dartmouth College case, 17 U. S. 518, 4 Wheat. 518, 4 L.Ed. 629; that the charter of a corporation is a contract within the constitutional prohibition against laws impairing the obligation of contracts, and that the purpose of the reservation is to enable the state to impose such restraints upon corporations as the Legislature may deem advisable for protection of the public. Such power is not reserved in any sense for the benefit of the corporation, or of a majority of the stockholders, upon any idea that the Legislature can alter the contract between the corporation and its stockholders, nor for the purpose of enabling it to do so."

It is also argued by the plaintiffs that since the old corporation's existence expired at the end of the 20 years, i.e. January 10, 1941, and when the charter was renewed for another 20 years, the charter and by-laws of the corporation in existence would give the right to the corporation to redeem the preferred stock, regardless of what the situation was when the first 20 years of the life of the corporation had expired. There was nothing in the Amended Articles of Incorporation of the Yukon Mill and Grain Company of June 26, 1942, which took away from the preferred stockholders any rights that they had prior to the filing of said amendment.

On this question it has been held that the amendment of a corporation's charter by renewing and extending it for a further period did not constitute a lapse or break in the corporate existence of the company. Loeffler et al. v. Federal Supply Co. et al., 187 Okla. 373, 102 P. 2d 862; Commonwealth v. Portsmouth Gas, 132 Va. 480 112 S.E. 792; Coyle v. Skirvin, 124 Fed. 2d 934. There was nothing in the extension of the life of this corporation that affected the position of the preferred stockholders in any way.

The amended charter which was filed on June 26, 1942, and in which the charter was renewed and extended for a period of 20 years from January 10, 1941, was simply a revival of the charter that had lapsed on January 10, 1941, and in no sense did the charter purport to represent the creation of a new corporation. In the charter, this significant language was used:

"(7) That through inadvertence and oversight on the part of the directors and officers of said corporation, the corporation's charter was allowed to expire on the 10th day of January, 1941, as aforesaid, but the fact that said charter was allowed to expire, was without the intention of said directors and officers, and that it was their intention and desire to keep said charter in full force and effect, and that notwithstanding the fact that said charter has so expired, the said corporation has continued to do business in the State of Oklahoma, and has continued to pay all taxes, and has continued to file all necessary reports with the State of Oklahoma as required by law, to the same extent as it did prior to the date of the expiration of the charter term.

"(8) That if said corporation is reorganized and compelled to transfer its property to an individual, or some other corporation, it will lose certain valuable rights, grants, privileges and property which it now owns and controls, but if it is permitted to continue the ownership of said property, rights, grants and privileges in its present name, the same will be preserved, and it is therefore quite essential that said corporation retain its present name and the right to do business in the State of Oklahoma.

"(9) That the undersigned, as the directors and officers of said corporation, desire to revive the said charter heretofore issued to it and to extend the same for a period of twenty (20) years from the 10th day of January, 1941, and for such purpose, the undersigned do hereby certify and state: . . . "

And in that amended charter, the provisions in regard to the preferred stock were the same as existed prior to January 10, 1941.

The filing of the Amended Articles of Incorporation on June 12, 1945, in which provision was made for the retirement of preferred stock, would confer no greater power for the redemption of preferred stock upon the directors and common stockholders than existed at the time the corporation was originally organized in January, 1921, for the reasons heretofore expressed.

The defendant corporation in this case has been very successful and well-managed, and no doubt it would be to the financial advantage of the common stockholders to retire this preferred stock; but in its infancy, this corporation sold preferred stock to the plaintiffs and a valid contract was made with them, and the Legislature, the defendant corporation, and this court are without authority to deny to these plaintiffs their constitutional rights. The action of the trial court will be affirmed.

CORN, GIBSON, LUTTRELL, and JOHNSON, JJ., concur. DAVISON, C. J., and WELCH and O'NEAL, JJ., dissent.