STATE of Oklahoma, on relation of James R. REIDY, County Attorney of LeFlore County, State of Oklahoma, Plaintiff in Error,

v.

INTERNATIONAL PAPER COMPANY, a Corporation, Defendant in Error.

No. 38306.

Supreme Court of Oklahoma.

July 21, 1959.

566

James R. Reidy, County Attorney, Poteau, for plaintiff in error.

Lytle, Johnston & Soule, Oklahoma City, for defendant in error.

PER CURIAM.

In this action the plaintiff, State of Oklahoma on relation of the County Attorney, sought to recover from defendant, International Paper Company, a corporation, penalties claimed to be due by reason of the defendant wrongfully and unlawfully holding real property and interest in lands in violation of the Oklahoma Constitution, Art. 22, Sec. 2, and the applicable Oklahoma statutes, 18 O.S.1951, §§ 1.20 and 1.25, inclusive, and as amended. The case was tried to the court and resulted in a judgment for the defendant and the plaintiff appealed.

Plaintiff alleged that the Long-Bell Lumber Company, a corporation, merged with defendant and that the ownership and holding of said rural lands in LeFlore County, Oklahoma, beginning in 1950, was not necessary for the transaction of the business for which defendant corporation was created and domesticated in this state and was in excess of that permitted by the laws of Oklahoma. The plaintiff further alleged that prior to the filing of this action he had given notice of penalties due, and all other things necessary to comply with the statute and this is not denied by the defendant. The answer of the defendant was a general denial with admission of merger of Long-Bell Lumber Company with defendant and that their charters authorized them to, among other things, acquire, own, occupy, use and develop and dispose of timber lands, timber, timber rights, cut-over lands or other lands for the purpose of manufacture of lumber, timber, articles of lumber and wood products and that the lands in controversy were purchased and held and used for said purposes and that said lands were also owned and held for growing and producing timber under a reforesting program and that the timber therefrom has been and will be harvested and cut and converted into lumber and wood products and that such ownership is authorized and permitted by the Constitution and Statutes of the State of Oklahoma.

On these issues the cause was tried to the court below and after hearing the evidence the trial court made findings of fact substantially in accord with the above claims and contentions of defendant and specifically that defendant and Long-Bell Lumber Company, a corporation, were chartered and licensed for the above stated purposes and that the lands in controversy were at all times and presently owned and held for reforesting under a program of growing and producing trees as a step in the production of wood, timber and wood products and as an incident thereof conducted a program of soil and land conservation. The lower court concluded as a matter of law that the owning and holding of said lands was at all times necessary and proper for carrying on the business for which defendant and its predecessor in title, Long-Bell Lumber Company, a corporation, were chartered and licensed and that neither corporation have owned and held or presently held said lands in violation of 18 O.S.1951 §§ 1.20–1.25, inclusive, as amended, or the Constitution of the State of Oklahoma and further that defendant was not liable for payment of the penalties claimed by plaintiff. The lower court thereupon rendered judgment denying plaintiff any relief against defendant. Plaintiff appealed.

It is the opinion of this court that the findings and judgment of the lower court are correct and that the judgment appealed from should be affirmed.

Sec. 2, Art. 22 of the Oklahoma Constitution restricts corporations in their ownership of rural real estate and insofar as pertinent here, provides:

"* * *; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; * * *"

Plaintiff brought its suit under the provisions of 18 O.S.1951 § 1.20 et seq., as amended, providing among other things penalties for unlawful owning and holding of real estate by a corporation.

In Texas Company v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631, 632, this court had before it the question of interpretation and application of the above provisions of the Constitution and statutes and therein we said:

"The words 'necessary and proper' used in the Constitution as expressive of the extent of the right of a corporation to acquire and hold land, do not import that which is indispensably necessary, but do import that which is proper, useful and suitable and thus conducive to the accomplishment of the purposes of the corporation, which implies actual need therefor in contradistinction to mere preference."

In the more recent case of United States Gypsum Co. v. State ex rel. Rutherford, Okl., 328 P.2d 431, 433, we once again considered the words "necessary and proper" and in construing the term cited the following statement in Fletcher on Corporations, Volume 6, Sec. 2788, where it is said:

"Consideration should be given, in determining the right, to the object of acquisition, the intention with which the property is held, and the use to which it may be and is designed to be put, and the implied power of the corporation is to be limited to such real property as is reasonably necessary to such corporate purposes and uses.

"The property need not be necessary. in the sense of indispensible, but it is sufficient if it is convenient and proper under the circumstances, and not inconsistent with the legitimate objects of the corporation."

Plaintiff further contends that only the surface of the land is required for the necessary and proper carrying on of defendant's business and urges that ownership of the lands should be limited to the surface and not to include the minerals.

The reverse of the proposition urged by the plaintiff was presented in the case of Texas Co. v. State ex rel. Coryell, supra, for in that case the State urged that Texas Co., being an oil and gas corporation, could not own the surface of lands from which it was producing oil and gas. In that case we held Texas Co. [193 Okl. 565, 180 P.2d 632], had the right to own the surface when "necessary and proper" under the definition of those words as above set out. In the case now before us the evidence reflects the source of supply of timber for lumber, poles and pulp for paper has for some years past been decreasing to the point where companies engaged in that business have, in order to assure a constant supply of timber, been compelled to engage in a program of reforesting on cut-over and other suitable lands and for that purpose have acquired considerable tracts of land; that an assured constant and sufficient supply of timber is required before such concerns can justify expenditure of large sums of money for the construction of processing plants for the carrying on of the business for which such companies were formed and to supply the demand for wood and paper products; that a period of time from 40 to 70 years is required to establish and bring to rotation a reforesting program complete with cutting and replacement and therefore requires the acquisition of the fee title to assure a uniform and efficient program and operation.

The evidence further reflects that oil and gas operations and production are not compatible with and in fact defeats a re-

foresting program and the growing of timber and leads to the conclusion that ownership of both the surface and minerals in the defendant is "necessary and proper" for carrying on the business of defendant. The drilling of oil wells on the timber land by third parties could defeat the reforesting program of the defendant. The ownership of the minerals by defendant is proper, useful and suitable for the protection of defendant's legitimate reforesting program. Nor do we see how or agree that payment of compensation or damages by a mineral owner to the defendant for loss or damage to trees and timber because of oil and gas operations could justify a separation of ownership of the minerals and surface or be a substitute for ownership of the entire fee title by the defendant. The defendant is in need of timber in order to fulfill the purposes for which it was formed and not damages that the drilling of oil wells would cause to that timber. To limit defendant to ownership of the surface in the light of the evidence would be tantamount to fastening the proverbial millstone about the neck of a legitimate business in carrying on the business for which it was chartered and licensed. The law makes no requirement of separation of ownership of surface and minerals in the situation presented by this appeal and provides no prescription as to the method. The question is whether the acquisition of the fee, in contemplation of the law, was actually and fairly proper, useful and suitable, and .thus conducive to the proper carrying on of a lawful enterprise within the legitimate purposes provided for in the articles of incorporation. Such clearly appears from the facts and the court's finding and judgment.

The judgment of the lower court is affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing was adopted by the court.

DAVISON, C. J., and WELCH, HALLEY, JOHNSON, and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and BLACK-BIRD, IRWIN and BERRY, JJ., dissent.

BERRY, Justice (dissenting).

As I read the majority opinion, it is bottomed on the premise that the purpose of Art. 22, Sec. 2 of the Constitution and vitalizing statutes, was to prevent corporations from engaging in ultra vires acts consisting of owning rural land where such ownership was not authorized by the corporations' charters. I am unable to agree.

In my opinion, Oklahomans, since the advent of statehood, have considered that the public policy of this State was to encourage individuals to own land and make homes thereon and to, therefore, discourage the ownership of land by corporations which would tend to thwart said policy. Oklahomans have, therefore, construed the cited Constitutional provision and legislation enacted pursuant thereto as both evidencing and protecting said public policy and as prohibiting corporations from owning land "except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed", but which business could not lawfully consist of owning rural land other than that necessary to carry on a business which did not consist of owning rural land. For example, a corporation engaged in the oil business could properly own land for office building purposes or warehouse purposes.

In pointing out the basis of Illinois public policy of prohibiting corporations from owning rural land in said State, the Supreme Court of Illinois in Carroll v. City of East St. Louis, 67 Ill. 568, 16 Am.Rep. 632, said in substance that the ownership of land by corporations tended to create a perpetuity and thereby give corporations special privileges not enjoyed by all;

tended to permit concentration of wealth in the hands of a few and tended to take real estate off the market and thus prevent individuals from acquiring same for use of homes.

This Court, in Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 570, 180 P.2d 631, 636, made this observation:

> "It is manifest from the quoted debates that there was a determination to prevent corporate ownership of farm lands because it was deemed to be inimical to home ownership and to promote tenancy in the farming class. * * *"

The rationale of the majority opinion is such as to permit a corporation to own any given number of acres of land and minerals underlying the land for any purpose irrespective of the character of the land, provided ownership of the land and minerals is within the framework of the corporation's charter. Therefore, that a corporation can properly own and farm any given number of acres of agricultural land. It follows, and of necessity, that the majority opinion is directly contrary to the proposition heretofore recognized by this Court that the purpose of the cited Constitutional provision and vitalizing legislation "to prevent corporate ownership of farm lands (lands which could be used as homes) because it was inimical to home ownership" and to the construction that Oklahomans have placed on said Constitutional provision and vitalizing legislation.

The matter of whether the construction that I have alluded to has any basis of course presents itself. If the people or the Legislature had intended to say that the ownership of land by corporations was only prohibited where such ownership was without the corporation's charter powers, then it would have been a very easy task to have briefly so stated in the Constitutional

provision and vitalizing legislation, and the considerable verbiage that was used in said Constitutional provision and vitalizing legislation would not have been used. If the purpose of said law was to preserve agricultural land for homes and deny it for vast commercial undertakings, and that such was one of the purposes must be conceded, then the pertinent language of the Constitution to the effect that "except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed" must be construed as excluding the ownership of rural land that can be used as homes except where the use is for office-building sites, warehouse sites, railroad right-of-ways, etc.

As I read Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631, upon which the majority opinion is predicated, that opinion does not sustain the majority opinion. In that case, as made clear at page 642 of 180 P.2d, this Court held that Texas Co. was only entitled to own the fee to the land there involved if the surface was "necessary to produce, save and transport the products from the premises," and that since the surface was not necessary under facts of the case for said purpose, the tracts of land owned in fee by Texas Co. were properly escheated to the State. This construction is in keeping with and not contrary to the construction that has been placed on the Constitutional provision and vitalizing statutes enacted pursuant thereto since the advent of Statehood. If the referred-to law is a remnant of the ox cart or horse-and-buggy age, it is the province of the people or the Legislature to change the law.

For the reasons herein stated, I respectfully dissent.

I am authorized to state that WILLIAMS, V. C. J., and BLACKBIRD and IRWIN, JJ., concur in the foregoing views.