C. W. LeFORCE, Henry S. LeForce and
Henry C. LeForce, Plaintiffs in Error,

v.

James M. BULLARD, Secretary of State,
Defendant in Error.

No. 42055.

Supreme Court of Oklahoma.

Jan. 21, 1969.

Rehearing Denied May 6, 1969.

James L. Hall, Jr., Andrew M. Coats, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, J. C. Drennan, Drennan & Drennan, Medford, Harry C. Evans, Murphy & Evans, Kingfisher, for plaintiffs in error.

Charles Nesbitt, Atty. Gen., D. Luster Cook, Sam Hellman, Asst. Attys. Gen., Oklahoma City, for defendant in error.

Charles B. Grethen, Oklahoma City, for amicus curiae, Oklahoma Farmers Union.

HODGES, Justice.

The issue for decision in this case is whether a corporation may be formed in this state for the general purpose of en-

gaging in the business of farming with the power, among others, of owning and holding real estate outside the limits of incorporated cities or towns. The precise question has never been presented to this court before. For the reasons to be stated, the question is answered in the affirmative.

Plaintiffs in error (hereinafter called plaintiffs), members of the LeForce family, sought to file Articles of Incorporation for LeForce Farms, Inc., with the Secretary of State. The purposes of the proposed corporation are stated in the Articles as follows:

"1. To engage in the farming business and all business necessary or reasonably related thereto.

2. To acquire, buy, lease, sell and maintain such real and personal property as may be necessary, incidental, or convenient in connection with any of the purposes of the corporation or related or incidental thereto, which shall include, but not be limited to, farm land outside the limits of any incorporated city or town presently owned by the LeForce family which has been in the farming business in Oklahoma for over 70 years which is in excess of 5000 acres, it not being the intent hereby to violate the Constitution or Statutes of the State of Oklahoma.

3. To deal in, breed, raise, and sell all kinds of livestock and crops or other animals and plants.

4. To develop, produce, and sell any other product resulting from working on, above, under, or in connection with the soil.

5. The above enumerated powers shall not be construed as limiting or restricting in any manner the powers of this corporation, but said corporation shall always have such incidental powers as may be connected with or relating to any specific power herein enumerated."

The Secretary refused to accept the Articles for filing and returned them to plaintiffs "* * * for the reason that after a consultation with the Attorney General the said Articles on their face appear to be contrary to the provisions of the Constitution of the State of Oklahoma". Thereafter, pursuant to the terms of 18 O.S.1961, § 1.233, plaintiffs appealed to the District Court. That court sustained defendant's demurrer to their petition, holding that the proposed Articles were contrary to Article 22, § 2, of our Constitution, and to applicable statutes of this state. Plaintiffs then appealed to this court.

It may be observed at the outset that our present statutes are no more restrictive on the subject of corporate ownership of real estate than our Constitution itself. Title 18 O.S.1961, § 1.19, captioned "General Powers common to all domestic corporations", gives to every domestic corporation "insofar as incidental to the transaction of its business or expedient for the attainment of the purposes stated in its articles of incorporation" the right to acquire real estate in any manner "subject to the limitations prescribed by Article XXII, Section 2, of the Constitution of Oklahoma" and 18 O.S.1961, § 1.20 through 1.25. The sections of the statute last cited are those prescribing penalties for the unlawful taking and holding of real estate by corporations, and procedure for the enforcement thereof. Section 1.20, which contains our general statutory limitations upon ownership of real estate by corporations, may be fairly characterized as "tracking" the provisions of Article 22, § 2, of our Constitution.

For those reasons, our discussion which follows will be addressed principally to the restrictions upon corporate ownership of real estate found in Article 22, § 2, of our Constitution. That section is set out in pertinent part below. For clarity and convenient reference, we will follow the procedure used in discussing this section in Oklahoma Natural Gas Co. v. State ex rel. Vassar, 187 Okl. 164, 101 P.2d 793, with

the section arbitrarily divided and "sub-titles" added:

*First Prohibition:*

"No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate

*Exception:*

other than real estate located in incorporated cities and towns and as additions thereto;

*Second Prohibition:*

nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose

*First Exception:*

except such as may be located in such towns and cities and as additions to such towns and cities,

*Second Exception:*

and further except such as shall be necessary and proper for carrying on the business for which it was charterd or licensed;

*Third Exception:*

and provided further that under limitations prescribed by the legislature, any corporation may acquire real estate for lease or sale to any other corporation. If such latter corporation could have legally acquired the same in the first instance;

*Third Prohibition:*

nor shall any corporation be created or licensed to do business in this State for the purpose of acting as agent in buying and selling or leasing land for agricultural purposes * * *".

The entire Third Exception was added to this section in a 1954 amendment. The words "or leasing" and "for agricultural purposes" were added to the Third Prohibition at the same time. The balance of the section, not set out above, consists of three provisos making special provisions for corporations taking real estate mortgages, trust companies, and public service corporations, which are not pertinent to the question for decision in this case. The phrase "corporations in general" which we shall use hereinafter, should be construed as meaning all corporations except those mentioned in the provisos and land companies.

We have considered this section of our Constitution in several cases, usually in connection with efforts to enforce statutory escheats (O.S.1931, § 1636), or the subsequently enacted systems of statutory fines and penalties (18 O.S.1941, § 86 et seq.; 18 O.S.1961, § 1.20 through 1.25). See State v. Prairie Oil and Gas Company, 64 Okl. 267, 167 P. 756; Oklahoma Natural Gas Co. v. State ex rel. Vassar, 187 Okl. 164, 101 P.2d 793; Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631; United States Gypsum Co. v. State ex rel. Rutherford, Okl., 328 P.2d 431; State ex rel. Reidy v. International Paper Co., Okl., 342 P.2d 565.

The above cases are not precisely in point on the facts and it would therefore serve no useful purpose to consider them in detail here. However, in the course of considering and deciding them (particularly the last three cited) this court has announced some principles in connection with the construction of this section of our Constitution which are helpful in the case now before us.

The first is that the First Prohibition above is directed against "land companies"—companies whose purpose is to buy, sell and deal in real estate as an article of commerce. Such companies are prevented by the First Prohibition (with its Exception) from dealing in rural real estate. "As to corporations in general, such as typified by the defendant corporation, it is not denied ownership of rural real estate, but it is limited under the further exception (labeled Second Exception above) in its acquisition of such real estate 'as shall be necessary and proper for carrying on the business for which it was chartered or licensed' ". Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631, at 634. We therefore agree with plaintiff's first

proposition, to the effect that the First Prohibition is not applicable in the case now before us, for the reason that the proposed LeForce Farms, Inc., is patently not a "land company" as that term is used above.

■ The second principle now well established with regard to Article 22, § 2, is that the words "necessary and proper" as used in the Second Exception " * * * do not import that which is indispensably necessary, but do import that which is proper, useful and suitable and thus conducive to the accomplishment of the purposes of the corporation * * *". Texas Co. v. State ex rel. Coryell, supra; United States Gypsum Company v. State ex rel. Rutherford, Okl., 328 P.2d 431; State ex rel. Reidy v. International Paper Company, Okl., 342 P.2d 565. This construction of the phrase "necessary and proper" is supported by the most eminent authority, and is in substantial accord with the construction followed by the United States Supreme Court over one hundred fifty years ago in the historic case of McCulloch v. Maryland, 4 Wheat. 316, 17 U.S. 316, 4 L. Ed. 579, in discussing the meaning of the same phrase as it appears in the last paragraph of Article 1, § 8, United States Constitution.

Defendant's attack on the proposed LeForce Farms, Inc., is general rather than specific. His first proposition on appeal is that the purpose clause of the proposed Articles of Incorporation (quoted above) "is so broad as to be all inclusive and unreasonable in the light of the Oklahoma statutes and the constitutional provision prohibiting the ownership of land by corporate enterprises". In argument under this proposition he construes as broadly as possible the purpose clause above quoted, but without specifically identifying the particular constitutional provision or statute he considers violated, and without citation of authority in support of his conclusion.

In this connection, we note that the so-called "single purpose rule" as to corporate purposes is not to be found in the Oklahoma Constitution, and is not stated directly in any statute, or former statute, of this jurisdiction. It is said that the rule requiring that corporations be created for only one general purpose was developed in this state by thirty opinions of the Attorney General promulgated over a period of fourteen years, apparently in construing 18 O.S.1941, § 12. See Draftsman's Note following 18 Okl.St.Ann. § 1.9; see also the commentary just preceding Title 18 in Oklahoma Statutes Annotated, and particularly the last paragraph beginning on page 253 in that volume of Oklahoma Statutes Annotated.

■ Title 18 O.S.1941, § 12, which listed the general purposes for which private corporations might be formed, has now been repealed and replaced by 18 O.S.1961, § 1.9, a part of the Business Corporation Act which was adopted by our legislature in 1947. The new § 1.9 provides simply that, with the exceptions set out in § 1.3, "Any corporation, except corporations created for the purpose specifically prohibited by Article XXII, Section 2, of the Constitution of Oklahoma * * * may be formed hereunder for any lawful purpose *or purposes* * * *" (emphasis supplied). In view of this plain and unambiguous language, it is clear that if the "single purpose rule" was ever the law in this jurisdiction, it was intentionally abandoned by the legislature with the adoption of the Business Corporation Act. Defendant's objection to the purposes of the proposed LeForce Farms, Inc. as overly broad, is therefore without basis in law.

■ Defendant's second proposition is that the ownership of real estate is not "necessary and proper" for carrying on the business of farming and ranching. This argument, without citation of supporting authority, is to the effect that plaintiffs *could* operate their farming and ranching business without owning the land, and that, at least insofar as ad valorem taxes are concerned, no tax saving would result to plaintiffs with the incorporation of their

business. We have previously noted, however, that "necessary and proper" does not mean "indispensably necessary" but does mean "that which is proper, useful and suitable and thus conducive to the accomplishment of the purposes of the corporation". Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631; United States Gypsum Company v. State ex rel. Rutherford, Okl., 328 P.2d 431; State ex rel. Reidy v. International Paper Company, Okl., 342 P.2d 565. It can hardly be denied that the ownership of the land is "proper, useful and suitable and thus conducive" to the accomplishment of the purposes of a corporation engaged in the business of farming and ranching.

Defendant's last proposition is to the general effect that the public policy of this state prevents the formation of the proposed corporation. While conceding that the establishment of the public policy of a state is a function of the legislative branch of government, 16 Am.Jur.2d Constitutional Law, § 167, defendant has not cited any enactment, either constitutional or statutory, setting out the public policy of this state which prevents the formation of a farming corporation with power to own and hold real estate. If it ever had been the public policy of this state not to allow corporations to be chartered or licensed for the purpose of farming, such policy was formulated by the legislature in § 1220 of the Revised Laws of 1910, as amended by 18 O.S.1941, § 12. However, the legislature by enactment of 18 O.S. 1961, § 1.9, supra, has changed any public policy against farming corporations by removing all prohibitions against corporations being chartered or licensed for the purpose of farming.

The only part of our Constitution bearing directly upon the question before us that has come to our attention is that portion of Article 22, § 2, previously quoted herein. The only part of that section that, *under any construction*, could be said to prevent the formation of an agricultural corporation with power to own and hold rural real estate, is the First Prohibition above. Since the First Prohibition does not specifically mention agricultural corporations, a holding that it bars the formation of an agricultural corporation with power to own and hold rural real estate would necessarily require a conclusion that it prevents the formation of any corporation in Oklahoma with power to hold *any* rural real estate.

This view was rejected in Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631. In that case we held, in effect, that because the First Prohibition applies only as against "land companies", and because the right of "corporations in general", including the defendant oil company to own and hold rural real estate was measured by the "necessary and proper" test of the Second Exception to the Second Prohibition, the particular rural real estate held by the Texas Company that was necessary and proper to its purposes could not be escheated to the state, under our former escheat statute.

We think the same reasoning must be applied to the proposed agricultural corporation in the case now before us, and that, like the Texas Company, it is subject only to the "necessary and proper" test applied as against "corporations in general".

In considering the intention of the framers of the Constitution, a search of the historical records of the Constitutional Convention of 1907 shows that it was not their purpose or intention to prohibit the creation or licensing of a corporation to engage in farming. The Committee on Private Corporations of the Constitutional Convention of 1907 in one of its initial reports first included a provision prohibiting a corporation from engaging in farming. Constitutional Convention Reports Etc., 1907, Committee Report #43, § 6; however, this provision was not embodied in the Constitution. By its absence, we may then safely assume that the provision in the initial report prohibiting corporate farming was considered and rejected by the Convention as a whole.

■ The intention of the framers of the Constitution was not to prevent private corporations from owning land, *but to prevent land companies from buying rural land and further to prevent private corporations from buying more rural land than necessary and proper for their operation,* so as to encourage private rural home ownership. Article XXII, § 2, Oklahoma Constitution, and Proceedings of The Constitutional Convention, ps. 17–20. A farming corporation no more violates this intention than an oil corporation owning rural lands, as they do in Oklahoma.

■ Defendant suggests but does not seriously argue, that the issuance of a charter to LeForce Farms, Inc., would "come very near to a violation of the rule against perpetuties", citing Article 2 § 32, Oklahoma Constitution.

The rule against perpetuities is directed against the creation of future estates which may not vest within a prescribed limitation of time. In its broad sense, it is said to concern common law and statutory rules against restraints upon, or suspension of, the power of alienation. Phillips v. Chambers, 174 Okl. 407, 51 P.2d 303; Barnes v. Barnes, Okl., 280 P.2d 996. We find no restraints against alienation, or provisions for the creation of future estates prohibited by law, in the articles of the proposed corporation here involved. This argument would also apply to *any* corporation owning land outside the limits of incorporated cities and towns and is untenable.

■ It is also argued in effect that since corporations "may live always and grow ever so powerful", the granting of the charter sought here would enable LeForce Farms, Inc., to accumulate vast amounts of rural real estate and hold it indefinitely, thus violating the spirit if not the letter of the rule against perpetuities, and that the State of Oklahoma, after having granted the charter, would be unable to protect the public interest because of the contractual nature of corporate charters established many years ago in Trustees of

Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629.

This is not the case. Under 18 O.S. 1961, § 1.8, power is reserved to our legislature to "alter, amend, annul, revoke, or repeal at any time any articles, charter, franchise, or certificate of incorporation * * * in so far as such corporation receives or has received any such rights, privileges, power, or immunities by force of the laws of this State" subject to constitutional limitations. This section of the statute is the substantial equivalent of Article 9, § 47, Oklahoma Constitution. The power reserved is applicable to those features of a corporate charter "affected with public interest". Yukon Mill and Grain Co. v. Vose, 201 Okl. 376, 206 P.2d 206.

This reservation of power has the effect of constitutionally avoiding the effect of the holding in the Dartmouth College case. In 18 Am.Jur.2d Corporations, § 92, it is said:

"After the Dartmouth College Case, which established the contractual nature of corporate charters, the general practice arose, following the suggestion of Justice Story in his concurring opinion in that case, on the part of the several states, in the grant of corporate charters to reserve the right to alter, amend, or repeal the charter. It is now settled that such a reservation is not repugnant to the grant, but is a valid limitation on the powers and privileges granted. Corporations are the creatures of the state, endowed with such faculties as the state bestows and subject to such conditions as the state imposes, and if the power to modify their charters is reserved, that reservation is a part of the contract, and no change within the legitimate exercise of the power can be said to impair its obligation."

Also, under 18 O.S.1961, § 1.14, the life of a corporation formed in this state is limited to an initial period of no more than 50 years, but such a corporation may extend its own existence for up to 50 more

years "at any one time" by amending its Articles to so provide; however, the corporation is then subject to and governed by "all the provisions of the *then existing* law" (emphasis supplied).

■ It is obvious under these sections of our Business Corporation Act, (Sections 1.8 and 1.14) our legislature is possessed of ample power with which to correct any abuses that may arise in connection with the corporate acquisition of rural real estate. Certainly the power to repeal or revoke the charter, reserved in § 1.8, is an awesome weapon with which to make corporations amendable to the public policy of this state, or to any future public policy that may be pronounced by our legislature. For a discussion of the reserved power to amend, revoke or repeal corporate charters by one of the writers of our own Constitution, see Noble State Bank v. Haskell, 22 Okl. 48, 97 P. 590, affirmed 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112, amended 219 U.S. 575, 31 S.Ct. 299, 55 L. Ed. 341. Similar powers have frequently been exercised in other jurisdictions; see United States v. Church of Jesus Christ of Latter-Day Saints, 5 Utah 361, 369, 15 P. 473, 136 U.S. 1, 10 S.Ct. 792, 808, 34 L.Ed. 478, 481. Nothing in the United States Constitution operates to restrain a state from terminating absolutely and unconditionally the existence of a corporation if the power to do so was properly reserved by statute. 19 Am.Jur.2d Corporations § 1587.

■ An additional argument, raised in the brief of amicus curiae, if we understand it properly, is to the following effect: that § 1220 of the Revised Laws of 1910 amounted to a legislative construction of Article 22, § 2, of our Constitution; that such construction, having been made soon after our Constitution was written, and having been adopted by a legislature which included many of the men who helped write the Constitution, is highly persuasive upon this court; that in construing the phrase "necessary and proper" in the Second Exception to the Second

Prohibition, this court should take into consideration the purposes for which corporations might be formed as set out in said § 1220.

We are unable to agree that § 1220 amounted to a legislative construction of Article 22, § 2, of our Constitution. § 1220 last appeared in our code, as amended, in 18 O.S.1941, § 12. In pertinent part, it was nothing more than a list of the broad general purposes for which private corporations might be formed, with the provision that "all such corporations shall have the right to purchase, hold and improve and convey real estate *for the purposes of their incorporation*" (emphasis supplied). § 1220 did not include the business of engaging in farming or ranching as a permissible corporate purpose, and if it were still the law in this state, plaintiffs would be precluded from incorporating their business. However, as we have seen, 18 O.S. 1941, § 12, and its predecessor, § 1220, R. L.1910 have been repealed and replaced by 18 O.S.1961, § 1.9, under which a corporation may be formed for "any lawful purpose or purposes". Amicus Curiae does not suggest that 18 O.S.1961, § 1.9, is unconstitutional or that the legislature did not have power to repeal 18 O.S.1941, § 12. Such being the case, the repealed statute is not pertinent in determining the meaning of "necessary and proper" as it appears in Article 22, § 2.

We may observe, in conclusion, that it would have been a simple matter for the writers of our Constitution to have included a provision to the effect that "No corporation shall be created or authorized to do business in this state for the purpose of engaging in the business of farming or ranching", or a provision that "No corporation created or authorized to do business in this state for the purpose of engaging in the business of farming or ranching shall have power to buy or sell real estate". They did not do so. Instead, they included the rather involved provisions of Article 22, § 2, which we have been considering.

The judgment is reversed and the cause is remanded to the trial court with direc-

tions to proceed in a manner not inconsistent with the views herein expressed.

IRWIN, C. J., and WILLIAMS, JACKSON, LAVENDER and McINERNEY, JJ., concur.

BERRY, V. C. J., and DAVISON, and BLACKBIRD, JJ., dissent.