Dear Representative Sullivan,
¶ 0 This office has received your letter requesting an Official Attorney General Opinion addressing, in effect, the following questions:
1. Is corporate farming constitutional under the OklahomaConstitution?
2. How should managed timberland be classified for assessment ofad valorem taxes?
3. Is the practice of not allowing a tax recipient (i.e., apublic institution such as a school, public library, EMS,vo-tech, city, county trash disposal, etc.) to protest anassessment before an equalization board or the Court of TaxReview, but allowing a taxpayer the opportunity to protest theassessment, constitutional?
¶ 1 Sections 951 through 956 of Title 18 establish the conditions under which a domestic corporation may be formed to engage in farming or ranching. Your first question asks whether the Oklahoma Constitution prohibits corporate farming and, in effect, seeks a determination as to the constitutionality of Sections 951 through 956 of Title 18.
¶ 2 The Oklahoma Supreme Court has reviewed the issue of corporate farming and found the same to be constitutional.LeForce v. Bullard, 454 P.2d 297 (Okla. 1969). In the LeForce
case, the Supreme Court reviewed a situation wherein the Secretary of State refused to file articles of incorporation for a farming corporation for the reason that the articles appeared to be contrary to Article XXII, § 2 of the Oklahoma Constitution which provides:
 No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; and provided further that under limitations prescribed by the legislature, any corporation may acquire real estate for lease or sale to any other corporation, if such latter corporation could have legally acquired the same in the first instance; nor shall any corporation be created or licensed to do business in this State for the purpose of acting as agent in buying and selling or leasing land for agricultural purposes[.]
Okla. Const. art. XXII, § 2.
¶ 3 In response to the Secretary of State's proposition that the public policy of Oklahoma prevents the formation of farming corporations, the Supreme Court made the following observation:
 [D]efendant [Secretary of State] has not cited any enactment, either constitutional or statutory, setting out the public policy of this state which prevents the formation of a farming corporation with power to own and hold real estate. If it ever had been the public policy of this state not to allow corporations to be chartered or licensed for the purpose of farming, such policy was formulated by the legislature in § 1220 of the Revised Laws of 1910, as amended by 18 O.S. 1941, § 12[18-12]. However, the legislature by enactment of 18 O.S. 1961, § 1.9[18-1.9],
supra, has changed any public policy against farming corporations by removing all prohibitions against corporations being chartered or licensed for the purpose of farming.
. . . .
 In considering the intention of the framers of the Constitution, a search of the historical records of the Constitutional Convention of 1907 shows that it was not their purpose or intention to prohibit the creation or licensing of a corporation to engage in farming. The Committee on Private Corporations of the Constitutional Convention of 1907 in one of its initial reports first included a provision prohibiting a corporation from engaging in farming. Constitutional Convention Reports Etc., 1907, Committee Report #43, § 6; however, this provision was not embodied in the Constitution. By its absence, we may then safely assume that the provision in the initial report prohibiting corporate farming was considered and rejected by the Convention as a whole.
 The intention of the framers of the Constitution was not to prevent private corporations from owning land, but to prevent land companies from buying rural land and further to prevent private corporations from buying more rural land than necessary and proper for their operation, so as to encourage private rural home ownership. . . . A farming corporation no more violates this intention than an oil corporation owning rural lands, as they do in Oklahoma.
LeForce, 454 P.2d at 302-303.
¶ 4 The Oklahoma Supreme Court in LeForce held that the Oklahoma Constitution does not prohibit corporations from being chartered or licensed for purposes of farming or ranching. In answer to your first question, therefore, corporate farming is not prohibited by the Oklahoma Constitution.
¶ 5 Your second question seeks a determination as to the appropriate assessment practices for managed timberland. You have asked whether assessing these properties as wastelands is constitutional. The basic rule of valuation for ad valorem tax purposes is found in Article X, § 8(A)(2) of the Oklahoma Constitution, wherein it is provided that:
 Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such property was actually used,
or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made.
Okla. Const. art. X, § 8(A)(2) (emphasis added).
¶ 6 This basic rule has been modified by Section 8B of ArticleX of the Oklahoma Constitution, which was added pursuant to legislative referendum. Section 8B provides in pertinent part as follows:
 Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. The provisions of this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person or when improvements have been made to the property.
Okla. Const. art. X, § 8B.
¶ 7 Prior to the addition of Section 8B, property was valued at its full fair cash value as of January 1. Section 8B, however, limits increases to five percent (5%) for any taxable year. The rule that property is to be assessed at its fair cash value, found in Article X, § 8 still applies, subject to the Section 8B limitations. Section 2817(B) of Title 68 codifies the constitutional rule and reads in pertinent part as follows:
 All taxable real property shall be assessed annually as of January 1, at its fair cash value, estimated at the price it would bring at a fair voluntary sale for:
 1. The highest and best use for which the property was actually used during the preceding calendar year; or
 2. The highest and best use for which the property was last classified for use if not actually used during the preceding calendar year.
 The Ad Valorem Division of the Tax Commission shall be responsible for the promulgation of rules which shall be followed by each county assessor of the state, for the purposes of providing for the equitable use valuation of locally assessed real property in this state.
68 O.S. Supp. 1998, § 2817[68-2817](B) (emphasis added).
¶ 8 The Oklahoma Tax Commission is statutorily responsible for creating guidelines for local county assessors to use in valuing properties. The guidelines relevant to agricultural land specify that unimproved land (such as timberland) can be classified as being used for timber, crops, or native or improved pasture. If the property falls into none of these categories it is classified as "waste." The primary emphasis in valuation, as can be seen from the Constitution and statute, is on the fair cash value based on the use being made of the land. Therefore, if land is used for the cultivation of timber the county assessor should, and is in fact required by law to, value this property at its fair cash value for that use. If a local county assessor has classified land as "waste" that should be classified at a higher use the assessor might not be assessing the property at its fair cash value, based on its use. Whether this is in fact occurring is a question of fact and not appropriate for resolution by an Attorney General Opinion. 74 O.S. Supp. 1998, § 18b[74-18b](A)(5).
¶ 9 Your third question asks whether it is constitutional to allow taxpayers to protest an assessment but deny a protest to a recipient of the taxes resulting from the assessment.
¶ 10 In fulfilling his or her duty to value the taxable property, the assessor is obligated by statute to "do all things necessary, including the viewing and inspecting of property." 68O.S. 1991, § 2818[68-2818](B). In the case of real estate, if the assessor increases the valuation over the assessment for the preceding year, the assessor must notify in writing the person in whose name such property is listed, giving the amount of such valuation as increased. 68 O.S. 1991, § 2876[68-2876](A). Subsection D of Section 2876 gives the taxpayer twenty (20) calendar days from the date of the mailing of such notice in which to file a complaint with the County Equalization Board contesting the value increase:
 The taxpayer shall have twenty (20) calendar days from the date the notice was mailed or in the event that notice was delivered from the date of delivery in which to file a written complaint with the county assessor specifying objections to action taken by the county assessor[.]
68 O.S. 1991, § 1876[68-1876](D).
¶ 11 Subsection E of Section 2876 provides the procedures for a taxpayer to file a complaint if valuation has not increased or decreased from the previous year. Subsection F of Section 2876 requires the assessor to schedule an informal hearing with the taxpayer and take action within five (5) working days of the date of the informal hearing. If the taxpayer wishes to appeal the assessor's determination, the taxpayer may file an appeal with the county board of equalization.
¶ 12 For those taxpayers having property assessed by the State Board of Equalization, the law provides a protest procedure wherein the taxpayer may protest the determination of the State Board by filing a written protest with the Court of Tax Review. Decisions of the Court of Tax Review are appealed directly to the Oklahoma Supreme Court. 68 O.S. Supp. 1998, § 2881[68-2881](F).
¶ 13 The protest statutes grant taxpayers the right of appeal from the determination of the fair cash value of taxable property. The statutes do not grant entities receiving the assessed taxes the ability to protest. Your third question asks whether the failure to allow a tax recipient a protest is constitutional.
¶ 14 The right to protest an assessor's determination of fair cash value is provided by statute. Statutory provisions are presumed to be constitutional and are upheld unless they are "clearly unconstitutional." Application of Oklahoma CapitolImprovement Authority, 355 P.2d 1028, 1031 (Okla. 1960). In theCapitol Improvement Authority case the Supreme Court made the following observation about the authority of the Legislature regarding fiscal matters:
 In construing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. There is a presumption that the Act is constitutional. The Legislature, unless prohibited by the Constitution, has the right to declare fiscal policy, and the question as to the wisdom of the policy is not within the scope of authority of the Supreme Court. Courts must sustain statutes, if possible, and nullify them only when they are clearly unconstitutional.
Id.
¶ 15 Oklahoma statutes governing disputes over ad valorem tax refer only to "taxpayers" protesting valuation. Tax recipients are never mentioned. One way to interpret this omission is that since the Legislature could have included tax recipients in the statutes and did not, it intended that they not have the same right to protest tax valuation that "taxpayers" have. Tax recipients could be granted standing to sue by statute but, to date, the Oklahoma Legislature has not provided for such an action. Given the strong presumption of constitutionality and the fact that there is no specific provision of the Oklahoma Constitution which grants standing to proceed in a tax protest to a tax recipient jurisdiction, it cannot be said that the Legislature's failure to provide for tax protests by recipient jurisdictions is unconstitutional.
¶ 16 It is, therefore, the Official Opinion of the AttorneyGeneral that:
1. Article XXII, § 2 of the Oklahoma Constitution does notprohibit the formation of corporations for the purpose offarming.
2. Pursuant to 68 O.S. Supp. 1998, § 2817(B), real property,including managed timberlands, should be classified for advalorem taxation purposes at the highest and best use for whichthe property was actually used during the preceding calendar yearor the highest and best for which the property was lastclassified for use. If a local county assessor has classifiedland as waste that should be classified at higher use, theassessor may not be assessing the property consistently with theconstitutional standard. Whether an assessor is, in fact,properly assessing an individual piece of property is a questionof fact not appropriate for resolution by an Attorney GeneralOpinion. 74 O.S. Supp. 1998, § 18b(A)(5).
3. The Oklahoma Constitution does not require that a taxrecipient jurisdiction must have the right to protest theassessments made by either the county assessor or the State Boardof Equalization.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL